**DOYON UNIVERSAL SERVICES and Alaska National Insurance Company, Appellants,**

v.

**Lawrence ALLEN and the Alaska Workers' Compensation Board, Appellees.**

No. S–8956.

Supreme Court of Alaska.

April 14, 2000.

Richard L. Wagg, Russell, Tesche, Wagg, Cooper & Gabbert, Anchorage, for Appellant.

Joseph A. Kalamarides, Kalamarides & Associates, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

I. *INTRODUCTION*

Doyon Universal Services and Alaska National Insurance Company (collectively, "Doyon") appeal the determination of the Alaska Workers' Compensation Board that Lawrence Allen's small bowel obstruction was work-connected and that the Brussels sprouts he ingested at Doyon's facility were a "substantial factor" in causing his disability. Because substantial evidence supports the Board's determination, we affirm.

II. *FACTS AND PROCEEDINGS*

A. *Facts*

Lawrence Allen was employed as a cook by Doyon at a remote site on the Trans–Alaska Pipeline. While he was on duty, Allen lived in an on-site dormitory and took his meals at the employee cafeteria. These employer-provided facilities are the only available room and board for the employees who work at the site.

On August 21, 1997, Allen traveled from his home in Anchorage to the pump station to begin a two-week rotation. He moved his belongings into his assigned room and went to the company cafeteria for dinner. At approximately 6:00 p.m., Allen ate a meal of pork chops, mashed potatoes, gravy, and "three or four" Brussels sprouts.

At 8:00 p.m. that night, Allen began his shift in the kitchen. Two hours later, he began to feel pain in his stomach. As the night progressed, his pains worsened and he began to feel nauseous. When his shift ended at 8:00 a.m. the next morning, Allen called the camp medic. When he saw the medic, Allen had a terrible stomachache, was vomiting, and had blood in his stool. From that time until the following day, Allen vomited frequently and had a form of diarrhea that was infused with blood.

On August 23, 1997, Allen was taken via medivac flight to Anchorage, where he was admitted to the Alaska Native Medical Center. There, it was determined that Allen had a complete obstruction of the small bowel caused by two bezoars [1] in his small intestine. Surgeon Frank Sacco surgically removed the obstruction in Allen's intestine. Dr. Sacco's post-operative report revealed that the bezoars contained dense necrotic vegetable matter, including traces of undigested Brussels sprouts.

Allen was released to work in November 1997. He has not experienced continuing problems associated with the incident.

### B. *Proceedings*

Allen filed a report of injury with Doyon on September 5, 1997. Doyon responded by filing a Controversion Notice with the Alaska Department of Labor in which it refused to pay Allen benefits on the grounds that his condition did not arise in the course and scope of his employment.

On October 8, 1997, Allen filed an Application for Adjustment of Claim with the Department of Labor, seeking temporary total disability benefits, permanent partial impairment benefits, medical benefits, transportation costs, reemployment benefits, interest, attorneys' fees, and legal costs. This claim was heard by the Alaska Workers' Compensation Board in Anchorage on May 12, 1998. Allen testified. The depositions of Allen's then-treating physician, Stephen Livingston, M.D., and Doyon's medical expert, Steven Kilkenny, M.D., were also submitted as evidence. Pursuant to a stipulation made by the parties at a March 1998 prehearing conference, the Board limited its inquiry to whether Allen's intestinal obstruction constituted a compensable injury occurring within the course and scope of his employment.

In a split decision filed on June 5, 1998, the Board found Allen's claim compensable, which entitled him to workers' compensation benefits under AS 23.30.

Doyon appealed the Board's decision to the superior court, which affirmed the Board's decision.

This appeal followed.

### III. *DISCUSSION*

#### A. *Standard of Review*

■ This court independently reviews the merits of an agency determination and does not defer to the decision of a superior court acting as an intermediate court of appeal.[2]

■ We review the Board's factual determinations under the "substantial evidence" test,[3] which requires us to determine "whether there is substantial evidence, in light of the whole record, such that a reasonable mind might accept the board's decision." [4] When applying this test, we independently review the evidence to determine whether the Board's conclusion was based on substantial evidence.[5] However, our determination is limited only to whether such evidence exists; [6] we neither reweigh the evidence nor choose between competing factual inferences.[7] We have held that "if the Board

1. *Stedman's Medical Dictionary* defines "bezoar" as "[a] concretion formed in the alimentary canal of animals, and occasionally man; formerly considered to be a useful medicine with magical properties and apparently still used for this purpose in some places; according to the substance forming the ball, may be termed trichobezoar (hairball), trichophytobezoar (hair and vegetable fiber mixed), or phytobezoar (foodball)." *Stedman's Medical Dictionary* 183 (25th ed.1990); *see also Webster's II New College Dictionary* 106 (1995) (defining "bezoar" as "[a] hard gastric or intestinal mass found chiefly in ruminants and once regarded as a magical antidote to poison").

2. *See Thompson v. United Parcel Serv.,* 975 P.2d 684, 687 (Alaska 1999) (citation omitted).

3. *See id.* (citation omitted).

4. *State, Pub. Employees Retirement Bd. v. Cacioppo,* 813 P.2d 679, 683 n. 6 (Alaska 1991) (citing *Delaney v. Alaska Airlines,* 693 P.2d 859, 863 (Alaska 1985), *overruled on other grounds by Wade v. Anchorage Sch. Dist.,* 741 P.2d 634, 638–39 (Alaska 1987)).

5. *See Dwight v. Humana Hosp. Alaska,* 876 P.2d 1114, 1118 n. 6 (Alaska 1994) (citation omitted).

6. *See Handley v. State, Dep't of Revenue,* 838 P.2d 1231, 1233 (Alaska 1992) (citing *Interior Paint Co. v. Rodgers,* 522 P.2d 164, 170 (Alaska 1974)).

7. *See Burgess Constr. Co. v. Smallwood,* 623 P.2d 312, 317 (Alaska 1981) (citations omitted).

is faced with two or more conflicting medical opinions—each of which constitutes substantial evidence—and elects to rely upon one opinion rather than the other, we will affirm the Board's decision." [8]

**B. Substantial Evidence Supports the Board's Finding that Allen Proved, by a Preponderance of the Evidence, that His Injury Is Compensable.[9]**

■ Employees are entitled to receive workers' compensation whenever they suffer injury arising out of and in the course of their employment.[10] Injuries that have both work-related and non-work-related causes are deemed compensable if the employer's actions were a "substantial factor" in causing the injury.[11]

**1. Substantial evidence supports the Board's finding that Allen was injured within the course and scope of his employment.**

Under the Alaska Workers' Compensation Act,[12] an employer is required to pay compensation to an employee who suffers an injury "arising out of and in the course of employment," regardless of fault.[13] An injury has arisen "out of and in the course of employment" if it occurred during (1) "employer-required or supplied travel to and from a remote job site"; (2) "activities performed at the direction or under the control of the employer"; or (3) "employer-sanctioned activities at employer-provided facilities." [14]

■ In the instant case, the Board found that Allen's injury occurred in an "employer sanctioned activity" in an "employer provided facility," and therefore concluded that his injury was within the course and scope of his employment. While it is undisputed that Allen ate the Brussels sprouts in an employer-provided facility, Doyon contests the Board's conclusion that Allen's act of eating was an "employer-sanctioned activity."

■ Because of the unique situation that remote worksites present,[15] we have adopted

---

8. *Yahara v. Construction & Rigging, Inc.*, 851 P.2d 69, 72 (Alaska 1993) (citations omitted).

9. Alaska Statute 23.30.120(a)(1) creates a presumption that a claim for workers' compensation is compensable. This presumption extends to the question of whether a disability is work-related. *See Gillispie v. B & B Foodland*, 881 P.2d 1106, 1109 (Alaska 1994). Application of this presumption includes a three-step process. *See id.* at 1109–11. First, to raise the presumption of compensability, the employee must establish a "preliminary link" between his or her disability and the employment. *Id.* at 1109.

Second, the employer has the burden of overcoming the presumption by presenting substantial evidence that the injury was not work-related. *See id.* An employer can satisfy this burden by providing substantial evidence that either: "(1) provides an alternative explanation which, if accepted, would exclude work related factors as a substantial cause of the disability; or (2) directly eliminates any reasonable possibility that employment was a factor in causing the disability." *Grainger v. Alaska Workers' Compensation Bd.*, 805 P.2d 976, 977 (Alaska 1991). We have held that "it has always been possible to rebut the presumption of compensability by presenting a qualified expert who testifies that, in his or her opinion, the claimant's work was probably not a substantial cause of the disability." *Big K Grocery v. Gibson*, 836 P.2d 941, 942 (Alaska 1992).

Third, once the employer produces substantial evidence to rebut the presumption of compensa-

bility, the presumption drops out and the employee must prove the elements of his or her claim by a preponderance of the evidence. *See Gillispie*, 881 P.2d at 1111.

In the instant case, the Board held Dr. Livingston's testimony that Allen's consumption of Brussels sprouts at the employer's cafeteria was a "precipitating factor" in Allen's "need for surgery" was sufficient medical evidence to raise the presumption of compensability. The Board next found that Doyon had successfully rebutted this presumption by presenting the statement of Dr. Sacco, the surgeon who had operated on Allen, that Allen's bowel obstruction "was not related to his employment or his job." Neither Doyon nor Allen has challenged these rulings in this appeal; therefore, these issues are considered abandoned. *See State v. O'Neill*, 609 P.2d 520, 528 (Alaska 1980). We therefore begin our analysis in the instant case with the third step.

10. *See AS 23.30.395(17); Fruit v. Schreiner*, 502 P.2d 133, 141 (Alaska 1972).

11. *See Tolbert v. Alascom*, 973 P.2d 603, 611–12 (Alaska 1999) (citations omitted).

12. AS 23.30.005–.400.

13. *See AS 23.30.045(a), (b), .395(2).*

14. AS 23.30.395(2).

15. The parties do not dispute that the injury occurred at a remote worksite.

a particularly expansive view of "work-connectedness,"[16] which we have articulated in the now-familiar "remote site" doctrine. The crux of this doctrine is that everyday activities that are normally considered non-work-related are deemed a part of a remote site employee's job for workers' compensation purposes because the requirement of living at the remote site limits the employee's activity choices.[17] As we have stated:

> because a worker at a remote site is required, as a condition of employment, to eat, sleep and socialize on the work premises, activities normally divorced from his work become part of the working conditions to which the worker is subjected.[18]

We have used this doctrine to extend workers' compensation coverage to injuries sustained by remote site employees while engaged in recreational pursuits,[19] and while running personal errands that were "reasonably contemplated and foreseeable by the employment situation."[20]

Here, Allen's act of eating the Brussels sprouts was a direct consequence of the limitations of working at a remote site. It is undisputed that the only food available on the premises was at the employer-provided cafeteria. Allen therefore had no personal choices as to where he should eat; he also had no access to a restaurant, grocery store, or kitchen facilities for his personal use. Unlike eating at home, Allen had little or no choice as to what he could eat, how it would be prepared, who would prepare it, or the quality of the ingredients. The limits placed on Allen's choices are further evident in the fact that he does not cook or eat Brussels sprouts at home; rather, the only vegetable dish he prepares is Costco's "California Blend," which contains corn, string beans, lima beans, broccoli and cauliflower. Because Allen's act of eating the Brussels sprouts was "an activity choice made as a result of limited activities offered at a remote site,"[21] it is precisely the type of activity the "remote site" doctrine was meant to cover.[22]

**16.** *See Anderson v. Employers Liab. Assurance Corp.*, 498 P.2d 288, 290 (Alaska 1972) (footnotes omitted).

**17.** *See Norcon v. Alaska Workers' Compensation Bd.*, 880 P.2d 1051, 1053 n. 1 (Alaska 1994) (citation omitted). In *M–K Rivers v. Schleifman*, we stated that because the "all-encompassing" nature of the remote sites makes it impossible for a "worker at a remote area" to "leave his work and residential premises to pursue an entirely personal whim and thereby remove himself from work connected coverage," remote worksites present a special situation in which many commonplace activities must be deemed incidents of employment, even though those same activities might not be considered work-related if conducted at a non-remote site. 599 P.2d 132, 134 (Alaska 1979).

**18.** *Norcon*, 880 P.2d at 1053 n. 1 (citation omitted).

**19.** *See Anderson*, 498 P.2d at 292–93 (holding that an injury sustained by an electrician employed at a remote site during a recreational pole-climbing contest was incident to employment and therefore covered by workers' compensation); *see also Northern Corp. v. Saari*, 409 P.2d 845, 846–47 (Alaska 1966) (holding that a remote camp employee's accidental death was incident to his employment in a case in which the death occurred while the employee was re-

turning to the camp after using employer-arranged recreational facilities at a nearby military base).

**20.** *M–K Rivers*, 599 P.2d at 136 (holding that an employee's injuries that were sustained in a motorcycle accident while he was driving from his remote employment site to Glennallen to cash his paycheck were compensable because it was foreseeable he might travel to Glennallen for the purpose of cashing the check, and because such an errand can be viewed as serving the mutual benefit of both the employer and the employee).

**21.** *Norcon*, 880 P.2d at 1053 n. 1.

**22.** Doyon contends that the "remote site" doctrine is inapplicable here in light of the first footnote in *Norcon*, in which we held that a fatal cardiac arrest suffered by a worker while showering at a remote site "does not fall within the parameters of the 'remote site' theory" because "[g]etting ready for work is not an activity choice made as a result of limited activities offered at a remote site. It is an activity that most employees engage in before they go to work, regardless of their location." *Id.*

The principle implicit in the result described in this footnote is reflected in our analysis in the instant case: For the "remote site" doctrine to attach, the employee's activity choices must be limited by the remote site and that limitation must play a causal role in the employee's injury. For example, if we were confronted with a case

For these reasons, Allen's act of eating in the cafeteria was incident to his employment under the "remote site" doctrine. Because the facts surrounding Allen's eating options are undisputed, substantial evidence supports the Board's finding that Allen has proven this aspect of his case by a preponderance of the evidence.

2. *Substantial evidence supports the Board's finding that the Brussels sprouts were a substantial factor in causing Allen's injury.*

■ Doyon also argues that it should not be held liable for Allen's disability because Allen presented no evidence that the Brussels sprouts that he ingested in Doyon's cafeteria caused the injury that led to his disability. Under our workers' compensation system, however, the fact that the Brussels sprouts were not the initial cause of Allen's blockage is immaterial. Doyon's argument that Allen should not receive compensation because the obstruction was the result of a pre-existing condition is invalid as well. We have upheld workers' compensation awards in numerous cases in which a pre-existing problem was aggravated or accelerated by work-related activity.[23] We have stated that workers' compensation liability is to be imposed "whenever employment is established as *a* causal factor in the disability."[24] A "causal factor" is a legal cause if "it is *a* substantial factor in bringing about the harm" at issue.[25]

■ The substantial factor test requires the party with the burden of proof to demonstrate that: (1) the disability would not have happened "but for" an injury sustained in the course and scope of employment; and (2) reasonable persons would regard the injury as a cause of the disability and attach responsibility to it.[26]

Here, the Board based its conclusion that the Brussels sprouts were a substantial factor in aggravating Allen's pre-existing condition on two main considerations: (1) Dr. Sacco's post-operative report, which states that undigested Brussels sprouts were found in the bezoars; and (2) the testimony of each party's medical expert, both of whom the Board felt expressed a belief that the Brussels sprouts were a precipitating factor in Allen's need for surgery.

The Board's finding that the Brussels sprouts were a substantial factor in aggravating Allen's pre-existing condition is consistent with the deposition testimony of both medical experts. Allen's expert, Dr. Livingston, stated that the Brussels sprouts "may well have precipitated the small bowel obstruction" and that it is "quite likely" that the Brussels sprouts were a precipitating factor. Doyon's expert, Dr. Kilkenny, echoed a similar opinion by stating that the Brussels sprouts "may have been a contributing factor" to Allen's disability and suggesting that eating the Brussels sprouts caused Allen to have the surgery earlier than he would have if he had not eaten them. Other evidence indicating that the Brussels sprouts played a critical role in Allen's disability is that Allen had no indication that he suffered from slow digestion or digestion problems prior to the event and that Allen had no

similar to *Norcon* in which an employee's heart attack was caused by him or her being hit with a sudden burst of cold water while in the shower, we would conclude that the employee's limited choice of showers at the remote site contributed to his or her injury, and that the remote-site doctrine therefore applies.

23. *See e.g., Tolbert v. Alascom,* 973 P.2d 603, 608 n. 15 (Alaska 1999); *Williams v. State, Dep't of Revenue,* 938 P.2d 1065, 1072–73 (Alaska 1997); *Tinker v. Veco, Inc.,* 913 P.2d 488, 493 (Alaska 1996); *Thornton v. Alaska Workmen's Compensation Bd.,* 411 P.2d 209, 210 (Alaska 1966); *see also Burgess Constr. Co. v. Smallwood,* 623 P.2d 312, 315 (Alaska 1981)("Such aggravation or acceleration must be presumed in the absence of

substantial evidence to the contrary.") (footnote and citations omitted in original).

24. *Ketchikan Gateway Borough v. Saling,* 604 P.2d 590, 597–98 (Alaska 1979) (emphasis in original).

25. *Id.* at 598 (emphasis in original) (citations omitted).

26. '*See Fairbanks N. Star Borough v. Rogers & Babler,* 747 P.2d 528, 532 (Alaska 1987) (extending the substantial factor test previously articulated in tort to a workers' compensation context); *see also State v. Abbott,* 498 P.2d 712, 726–27 (Alaska 1972) (discussing the substantial factor test).

more bezoars or digestion problems after his surgery.[27]

▇ Although there is evidence that casts doubt on the Board's finding, our role in reviewing the Board's decision is simply to determine whether it is supported by substantial evidence in light of the whole record.[28] We do not reweigh the evidence or choose between competing inferences; rather, we merely determine whether a reasonable mind could accept a decision of compensability in light of the record as a whole.[29]

Evidence that casts doubt on the Board's finding includes both experts' suspicions that "the bezoars developed over time" and that "the employee may have suffered some intestinal malfunction which slowed or impeded digestion." However, the Board accorded greater weight to the fact that both Allen's and Doyon's experts regarded the Brussels sprouts as a factor in the blockage of Allen's intestine. Because the record indicates that Doyon's and Allen's experts agree that the Brussels sprouts probably precipitated and hastened Allen's need for surgery, the Board was not unreasonable in concluding that Allen's obstruction would not have occurred "but for" the Brussels sprouts.

Similarly, while the Board did consider Dr. Sacco's statement that Allen's obstruction was caused from food material unrelated to his employment, it gave greater weight to Dr. Sacco's post-operative report, which was written immediately after the surgery and stated that Brussels sprouts were found in the bezoars. The Board's decision to accord greater weight to the post-operative report does not appear unreasonable because the other statement was signed in anticipation of litigation, at Doyon's request.[30] In addition, given Dr. Sacco's likely unfamiliarity with the definition of work-connectedness in workers' compensation law, it was not unreasonable for the Board to consider Dr. Sacco's post-operative report as having "greater probative value."

The second prong of the substantial factor inquiry is whether reasonable persons would regard the injury as a cause and attach responsibility to it.[31] As we have noted above, the experts' opinions that the Brussels sprouts played a role in Allen's injury, as well as the fact that Brussels sprouts were found in Allen's bezoar, provide ample evidence for reasonable minds to conclude that the Brussels sprouts ingested at Doyon's facility were responsible for Allen's blockage and need for surgery. We therefore find that the second prong of the substantial factor inquiry is satisfied.

## IV. CONCLUSION

Because substantial evidence supports the Board's findings that Allen's injury arose in the course and scope of his employment and that his work-related injury was a substantial factor in causing his disability, we AFFIRM the decision of the Board.

---

**27.** A later procedure to check for other bezoars came back negative and a CAT scan of the small bowel determined that Allen's small bowel was in normal condition.

**28.** *See Gillispie v. B & B Foodland,* 881 P.2d 1106, 1111 (Alaska 1994) (citations omitted).

**29.** *See Black v. Universal Servs. Inc.,* 627 P.2d 1073, 1075 (Alaska 1981) (citation omitted).

**30.** The statement is written on Alaska National Insurance Company letterhead and was drafted by an Alaska National Insurance Company employee.

**31.** *Rogers & Babler,* 747 P.2d at 532.