**Tae R. YOON, Appellant,**

v.

**ALASKA REAL ESTATE COMMISSION, Appellee.**

No. S–9296.

Supreme Court of Alaska.

Feb. 23, 2001.

---

William D. Artus, Anchorage, for Appellant.

No appearance, for Appellee.

Before FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

## OPINION

CARPENETI, Justice.

## I. INTRODUCTION

Real estate agent Tae R. Yoon appeals the Real Estate Commission's finding that he committed promissory fraud in selling the Muldoon Z Plaza Mall to Yong Ok Moore by promising to personally pay for roof repairs and then incurring over $15,000 in roofing repairs at Moore's expense. The commission also found that Yoon failed to properly disclose his dual agency, agreed to act as a property manager even though he had no such expertise, and violated the property management agreement by failing to relay information to Moore. Because substantial evidence supports the finding that Yoon committed promissory fraud, we affirm.

## II. FACTS AND PROCEEDINGS

Yoon and Moore first met around the end of July 1996 to discuss the possibility of Moore purchasing some commercial real estate in Anchorage. Moore was inexperienced in matters of commercial real estate, but had recently settled a personal injury case for over $500,000 and wanted to invest her award. Moore apparently chose Yoon as her real estate agent in part because of his ability to translate between Korean and English. Moore, who is Korean-born, speaks English as a second language, and used a translator throughout the proceedings in this case.

Yoon showed Moore several properties including the Muldoon Z Plaza Mall. When Yoon first showed the mall to Moore, he did not disclose that he was the listing agent for the property, in violation of the dual agency disclosure law.[1] Yoon and Moore conducted a brief walk-through inspection of the mall on August 6. Because of his previous attempt to sell the mall, Yoon was aware of the mall's leaky roof, and he disclosed this problem to

---

1. AS 08.88.396(c) permits dual agency only with informed consent: "A person licensed under this chapter may act as an agent for both a prospective seller and a prospective buyer of real estate only after the licensee informs both the seller and the buyer of the dual agency and obtains written consent to the dual agency from both principals."

Moore. After inspecting the mall, Yoon disclosed his dual agency status, but Moore refused to sign the dual agency form.

Moore contacted Yoon on August 8 to indicate that she wanted to make an offer on the mall. The next day, she signed the dual agency form for Yoon along with an earnest money agreement offering to purchase the mall.

Moore made a written offer to buy the mall for $1,100,000. Peter Zamarello, the mall's owner, rejected this original offer because he did not want to be responsible for any repairs as a part of the sale. Zamarello prepared a counteroffer that incorporated an "as is" provision. When Moore and Yoon met with Zamarello on August 9 to discuss the offer, Zamarello suggested that Moore have an inspection performed to evaluate the physical condition of the mall.

After the Zamarello meeting, Yoon provided Moore with a list of engineering firms that could perform an inspection of the mall. Yoon also provided Moore with the business card for First Alaska Contractors. First Alaska was owned by Myoung S. Kim, another member of the Korean community, and apparently a professional acquaintance of Yoon; Moore also knew of First Alaska and Kim because Moore attended the same church as Kim's wife. The next day Moore asked Yoon to call First Alaska to perform the inspection.

On August 12, First Alaska performed the inspection with Moore, Yoon, and Zamarello present. First Alaska told Moore that the roof was in very poor condition and needed to be replaced at an estimated cost of at least $200,000. First Alaska also told Moore that bubbles in the roofing needed to be repaired before winter at an estimated cost of $30,000. After the inspection, Moore and Yoon discussed its results and drafted a revised offer to purchase the mall.

Moore and Yoon met with Zamarello again on August 13. In response to the inspection, Zamarello agreed to perform some of the necessary repairs to the mall prior to closing. Zamarello drafted an addendum, agreeing specifically to "cut down the bubbles, [and to] clean and patch the roof," but making no warranty or representation that this would prevent the roof from leaking during the coming winter. Moore signed the purchase agreement and the repair addendum on August 14.

Zamarello hired Rite–Way Roofing to perform the repairs he had agreed to make prior to the closing. Myoung Suk Kim, a Korean acquaintance of Moore's and an employee of First Alaska, provided help and advice to Moore regarding the roof repairs to be performed by Rite–Way. In mid August, Kim, Moore, Yoon, and Rite–Way inspected the roof. Moore and Kim used chalk to circle bubbles that Rite–Way was to repair at Zamarello's expense. During the next two weeks, Kim, Moore, and Yoon circled more bubbles in four subsequent inspections.

Closing was scheduled for September 12. Because all of the roof repairs were not completed, Moore requested that the closing date be postponed. However, Moore completed the purchase of the mall on September 12, relying on Yoon's promise to "take care of repairs" and on First Alaska's determination that the roof repairs would "remedy any leak problems through the winter." Moore testified that "[Yoon] led me to close" with assurances that "he would be responsible" if any problems arose, "even after closing." Moore also testified that Yoon had made similar assurances concerning leaking boilers and water heaters by saying "don't worry, I'll replace, at my expense" and by telling Moore that he would "spend his own money if necessary."

Around September 20 Moore left for Korea to visit with relatives. Moore left Yoon in charge of the mall through a property management agreement, for which he received no compensation, and by executing a limited power of attorney for Yoon to act on her behalf regarding the mall during her absence.

Zamarello paid Rite–Way $4,800 for the roof repairs completed by closing. Zamarello told Rite–Way that he would not pay for any repairs made after the sale. Rite–Way had promised to repair all circled bubbles and apparently repaired some bubbles after closing at its expense. Yoon followed up with Rite–Way to be sure that all the bubbles

had been repaired. While admitting that not all bubbles were repaired, Yoon testified that he was satisfied that Rite–Way had made all of the necessary repairs.

Despite the repairs completed by Rite–Way, the mall roof leaked during the late fall and early winter while Moore was in Korea. Yoon hired contractors to make emergency repairs to deal with these leaks. Yoon also hired contractors to provide snow removal and other maintenance tasks. Although the property management agreement obligated him to contact Moore about emergencies and necessary expenses, Yoon did not do so. When Moore returned, Yoon presented her with invoices totaling more than $20,000 for the various services that had been performed at the mall.

Moore filed a claim with the Alaska Real Estate Commission under the statutorily created Alaska Real Estate Surety Fund.[2] The hearing officer for the commission held an administrative hearing lasting seven days. The hearing officer received testimony from seventeen witnesses, and issued a fifty-seven-page Findings of Fact, Conclusions of Law, and Proposed Decision. The commission adopted the hearing officer's proposed decision that found that Yoon committed promissory fraud and awarded Moore $10,000.

Yoon appealed to the superior court, which affirmed the commission's decision. Yoon appeals again.

## III. STANDARD OF REVIEW

■ We independently review the merits of an administrative agency's determinations.[3] We will uphold factual findings that are supported by substantial evidence.[4] Substantial evidence is "such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion."[5]

## IV. DISCUSSION

The central issue is whether Yoon committed promissory fraud. Because this issue is primarily a question of fact and based on credibility determinations, we will affirm the Real Estate Commission's finding if supported by substantial evidence.[6] Yoon argues that there is no substantial evidentiary basis that he committed promissory fraud.

■ Promissory fraud requires a showing of (1) a promise, (2) scienter, or the present intent of not following through on that promise, (3) intention to induce reliance, (4) justifiable reliance, and (5) damages.[7] We review not for a preponderance of the evidence proving each element, nor for substantial evidence against a finding of any element; rather, we look for substantial evidence that a reasonable mind might accept as adequate to support a finding of each element.[8]

■ We hold that substantial evidence supports the hearing officer's finding that Yoon made a promise to take care of the roofing problems. Moore testified that "[Yoon] promised to repair" the roof by saying that he would "take care of repairs" and that "he would be responsible," if any problems arose. Moore also testified that Yoon had made similar assurances concerning leaking boilers and water heaters by saying "don't worry, I'll replace, at my expense" and by telling Moore that he would "spend his own money if necessary." This evidence implies Yoon's promise to be financially responsible for the roof repairs.

2.  See AS 08.88.450.

3.  See Balough v. Fairbanks North Star Borough, 995 P.2d 245, 254 (Alaska 2000).

4.  See id.

5.  Id. (quoting Miller v. ITT Arctic Servs., 577 P.2d 1044, 1046 (Alaska 1978)).

6.  See Doyon Universal Servs. v. Allen, 999 P.2d 764, 767–68 (Alaska 2000).

7.  See Lazar v. Superior Court, 12 Cal.4th 631, 49 Cal.Rptr.2d 377, 909 P.2d 981, 984–85 (1996). Cf. Barber v. National Bank of Alaska, 815 P.2d 857, 862 (Alaska 1991) (applying similar requirements for offense of "knowing misrepresentation"). See generally Restatement (Second) of Torts § 525 (1977).

8.  See Doyon, 999 P.2d at 767; Alaska State Comm'n for Human Rights v. Yellow Cab, 611 P.2d 487, 490–92 (Alaska 1980).

■ Substantial evidence supports the finding of scienter or the present intent not to follow through with the promise. Moore testified that when she confronted Yoon about the additional roofing repair expenses, Yoon got upset, asked her, "Did I ever guarantee anything in writing about the property?" and left. A fair interpretation of Yoon's comment is that he did not intend to follow through on any oral promise regarding the mall.

Additional evidence indirectly supports the finding of scienter. Yoon knew of the existing serious problems with the roof of the mall because of his previous attempts to sell the mall. He also knew that Moore was a vulnerable client because she lacked experience in real estate matters and fluency in English. Furthermore, Yoon violated statutory law by failing to disclose his dual agency status before showing the mall to Moore.

Substantial evidence supports a finding that Yoon intended to induce reliance on his promise. Yoon was Zamarello's selling agent for the mall. Yoon intended to induce Moore to buy the mall in part to collect his commission of $66,000. Yoon directed Moore to an inspector with whom he had previous dealings and who provided an incomplete one-page inspection report of the mall, decreasing the chance that the roof problems would delay the sale. Yoon also agreed to serve as property manager without compensation. The evidence substantially supports the finding that Yoon intended to induce Moore's reliance on his promises to close the sale.

Substantial evidence supports a finding that Moore's reliance was justifiable. Moore testified that Yoon "led me to close"; she actually relied on Yoon's promise. Also, Moore's inexperience with real estate matters led her justifiably to rely upon Yoon as a real estate agent. Furthermore, Yoon provided Moore special assistance by helping her to write a business plan, agreeing to act as property manager without compensation, and expressly promising to replace leaking boilers and water heaters at his expense.

Substantial evidence supports the award of $10,000 damages. Yoon incurred on Moore's account over $20,000 for maintenance of the mall during the two months that Moore was away. While some of this was for snow removal services, Yoon authorized $10,120 in roofing repairs by Rite–Way alone. He further authorized $5,000 in maintenance and emergency roofing repairs by First Alaska.

In Yoon's defense, his testimony and other evidence contradict many of Moore's allegations. But we are not asked whether, nor do we find that, Yoon committed promissory fraud. Nor do we find that Yoon has no substantial evidence in his defense. The focus of our review is whether substantial evidence supports the finding that Yoon committed promissory fraud; we find that it does.

## V. CONCLUSION

Because substantial evidence supports the finding of promissory fraud, we AFFIRM the decision of the Department of Commerce and Economic Development, Real Estate Division.