*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| FREDRICK G. WILLIAMS, | ) | |
| | ) | Supreme Court No. S-14513 |
| Appellant, | ) | |
| | ) | Superior Court No. 1KE-11-00219 CI |
| v. | ) | |
| | ) | O P I N I O N |
| KETCHIKAN GATEWAY | ) | |
| BOROUGH, | ) | No. 6751 – February 15, 2013 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Ketchikan, Trevor Stephens, Judge.

Appearances: Fredrick G. Williams, pro se, Ketchikan, Appellant. Scott A. Brandt-Erichsen, Borough Attorney, Ketchikan, for Appellee.

Before: Fabe, Chief Justice, Carpeneti, Winfree, Stowers, and Maassen, Justices.

FABE, Chief Justice.

Fredrick Williams appeals the superior court's decision affirming the Ketchikan Gateway Borough's ruling that the house at 511 Stedman Street is not exempt from Ketchikan Gateway Borough taxation. In March 2002 Williams received a grant to rebuild his house from the Bureau of Indian Affairs Housing Improvement Program. Under the grant, Williams would have been required to repay the full amount of the grant

if he had transferred the house within ten years of ownership.  Because Williams has owned the home for ten years, the repayment amount will annually decrease by ten percent of the original amount, resulting in no repayment for a transfer occurring 20 years or more after Williams received the grant.  Williams executed a deed of trust securing the federal government's right to repayment under the grant with the Stedman Street property.

Williams claims that under the grant and the deed of trust, "[t]he federal government owns . . . the $115,000 it took to build the home," and that Williams was therefore exempt from paying property taxes on it.  On appeal, the superior court heard this argument and rejected it, upholding the Ketchikan Gateway Borough's view that the deed of trust securing the grant did not divest Williams, the record owner, of the ownership interest in his real property.[1]

Because we agree with the superior court that substantial evidence supports the Ketchikan Gateway Borough's factual determinations and that the Borough's decision was correct as a matter of law, we AFFIRM the superior court and adopt its decision, which is attached as an appendix.[2]

---

[1]    "When the superior court acts as an intermediate court of appeal in an administrative matter, we independently review the merits of the agency's decision." *Powercorp Alaska, LLC v. State, Alaska Indus. Dev. & Exp. Auth.*, 171 P.3d 159, 163 (Alaska 2007) (citing *Williams v. Abood*, 53 P.3d 134, 139 (Alaska 2002)) (substantial evidence standard applies to review of agency's factual findings and rational basis standard applies to review of questions of law that involve agency expertise).

[2]    The attached decision has been edited to conform to the technical rules of the Alaska Supreme Court and internal record citations have been removed.

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

FIRST JUDICIAL DISTRICT AT KETCHIKAN

| | | |
|---|---|---|
| FREDRICK G. WILLIAMS, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KETCHIKAN GATEWAY BOROUGH, | ) | |
| DIRECTOR OF ASSESSMENTS, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | Case No. 1KE-11-219 CI |

## DECISION

Mr. Williams appeals the Ketchikan Gateway Borough's (KGB) decision that the improvements (house) situated on the real property located at 511 Stedman Street are not exempt from KGB property taxation per Ketchikan Gateway Borough Code § 45.11.020 and AS 29.45.030. Oral argument occurred on September 14, 2011. The KGB was represented by KGB Attorney Scott Brandt-Erichsen. Mr. Williams appeared pro se. The court took the matter under advisement. The KGB's decision is, for the following reasons, AFFIRMED.

## I. POINTS ON APPEAL

Mr. Williams' Statement of Points presents the following issue:

a. Whether the federal government has an interest in Lot 20, Block 28 (511 Stedman Street) which exempts the extent of that interest from KGB property taxation per KGB § 45.11.020 and AS 29.45.030.

## II. JURISDICTION

This court has jurisdiction to review Mr. Williams' appeal of the KGB's decision that the property (including the house) at 511 Stedman Street is not exempt from taxation under KGB § 45.11.020 or AS 29.45.030 per AS 22.10.020(d), Alaska Appellate Rule 601(b), and KGB § 45.11.100©).

## III. STANDARD OF REVIEW

The Alaska Supreme Court has recognized that:

> In reviewing administrative decisions . . . [there are] at least four principal standards of review. "These are the 'substantial evidence test' for questions of fact; the 'reasonable basis test' for questions of law involving agency expertise; the 'substitution of judgment test' for questions of law where no expertise is involved; and the 'reasonable and not arbitrary test' for review of administrative regulations." We review an agency's interpretation of its own regulation under the reasonable basis standard, deferring to the agency unless the interpretation is "plainly erroneous and inconsistent with the regulation." We review questions of law and issues of constitutional interpretation de novo under the substitution of judgment standard.[1]

"Substantial evidence is evidence that a 'reasonable mind might accept as adequate to support a conclusion.' "[2] An appellate court does not "reweigh the evidence

---

[1] *Simpson v. State, Commercial Fisheries Entry Comm'n*, 101 P.3d 605, 609 (Alaska 2004) (quoting *Jager v. State,* 537 P.2d 1100, 1107 n.23 (Alaska 1975) and *Lauth v. State*, 12 P.3d 181, 184 (Alaska 2000)).

[2] *May v. State, Commercial Fisheries Entry Comm'n*, 175 P.3d 1211, 1216 (Alaska 2007) (quoting *Cleaver v. State, Commercial Fisheries Entry Comm'n*, 48 P.3d 464, 467 (Alaska 2002) (internal citation and quotations omitted)).

nor choose between competing factual inferences,"[3] and the court must uphold an administrative agency's decision if it is supported by substantial evidence "[e]ven though there are competing facts that might support a different conclusion."[4] An appellate court may reverse an agency's decision "only if we 'cannot conscientiously find the evidence supporting [the agency's decision] is substantial.' "[5]

## IV. RECORD

Emily R. Whitesides, Personal Representative of the Estate of Robert Whitesides, executed a Quitclaim Deed on June 19, 1991 conveying the Estate's interest in Lot 20 of Block 28, as shown on plat of U.S. Survey 1990 (511 Stedman property), to Fredrick George Williams. The Quitclaim Deed was recorded in the Ketchikan Recording District.

The KGB assessed the value of the 511 Stedman property as follows since 1999:

| Year | Land | Improvements | Total |
|------|------|--------------|-------|
| 1999 | $40,700 | $9,900 | $50,600 |
| 2000 | $42,500 | $6,900 | $49,400 |
| 2001 | $42,500 | $6,900 | $49,400 |
| 2002 | $42,500 | $0 | $42,500 |
| 2003 | $42,500 | $126,500 | $169,000 |
| 2004 | $42,500 | $116,600 | $159,100 |
| 2005 | $42,500 | $116,600 | $159,100 |

---

[3]     *State of Alaska, Div. of Corps., Bus. & Prof'l Licensing v. Platt*, 169 P.3d 595, 601 (Alaska 2007) (quoting *Doyon Universal Servs. v. Allen*, 999 P.2d 764, 767 (Alaska 2000)).

[4]     *Platt*, 169 P.3d at 601.

[5]     *Powercorp Alaska, LLC v. State, Alaska Indus. Dev. & Exp. Auth.*, 171 P.3d 159, 163 (Alaska 2007) (quoting *Robinson v. Municipality of Anchorage*, 69 P.3d 489, 493 (Alaska 2003)).

| 2006 | $48,900 | $134,100 | $183,000 |
| 2007 | $61,100 | $134,100 | $195,200 |
| 2008 | $59,000 | $136,800 | $195,800 |
| 2009 | $59,000 | $136,800 | $195,800 |
| 2010 | $59,000 | $136,800 | $195,800 |
| 2011 | $59,000 | $136,800 | $195,800 |

Mr. Williams entered into a Ketchikan Indian Corporation Housing Program Housing Improvement Program Grant Agreement on March 5, 2002.[6] The Grant Agreement references Block 28, Lot 20 and provides that the grant is being made by the Bureau of Indian Affairs (BIA) Housing Improvement Program (HIP), and that it is subject to the regulations set forth at 25 C.F.R. § 256 (1998). The Grant Agreement also provides that the grant was for "building materials and labor assistance" and that the assistance provided "will be only that amount necessary to meet the basic housing needs of the Grantee." The Grant Agreement reflects that the grant was being made under "HIP Category 'C'," which provides that the entire grant amount would have to be repaid if he sold "the house for which the grant was made" during the next 10 years, and that the amount due on sale would decrease 10% a year thereafter — which results in no payment having to be made if the property were sold after 20 years. And the Grant Agreement provides that the terms thereof were binding on the Grantee's successors in the event of his death during the term of the grant and "shall be binding on . . . persons who succeed to the grantee's interest(s) in the house for which the grant is made."

Mr. Williams executed a Deed of Trust Promissory Note (DOT Note) on March 8, 2002. The DOT Note was recorded in the Ketchikan Recording District on April 2, 2002. The DOT Note includes the following:

---

[6] Mr. Williams requested that this document be added to the record. The KGB did not oppose the request. The court granted the request. The document is part of the record but is not numbered as are the other documents in the record.

a. Payment on the Note is secured by Lot 20, Block 28.

b. Mr. Williams promises to pay $115,000 in return for a loan he received from the Ketchikan Indian Corporation Housing Authority for the U.S. Bureau of Indian Affairs Home Improvement Program.

c. The loan is interest free.

d. If there is a voluntary or involuntary sale or transfer of the security (Lot 20, Block 28) during the first 10 years the amount due will be the principal loan amount of $115,000. If this occurs during the 10th year the amount due will be 90% of the principal amount. The balance that would be due is thereafter reduced by 10% each succeeding year until there is a zero balance after 20 years.

e. Otherwise, no payments are required.

f. The Promissory Note is secured by a Deed of Trust.

g. The Holder of the Promissory Note "has the right to sue on the Note and obtain a personal judgment . . . for satisfaction of the amount due under the Note either before or after a judicial foreclosure of the mortgage or Deed of Trust under AS 09.45.170-09.45.220."

Mr. Williams executed a Deed of Trust (DOT) on March 8, 2002. The DOT was recorded in the Ketchikan Recording District on April 2, 2002. The DOT includes the following:

a. Mr. Williams is the Trustor. Ketchikan Indian Corporation Housing Authority is the Beneficiary. Ketchikan Title Agency, Inc. is the Trustee.

b. The Beneficiary, "for the U.S. Bureau of Indian Affairs, Home Improvement Program," provided funds to Mr. Williams for repairing and upgrading the property at Lot 20, Block 28. As a result, Mr. Williams owes the Beneficiary $115,000.

c.      "The Trustor grants, bargains, sells and conveys to Trustee, in Trust with Power of Sale, that property described as: Lot twenty (20) of Block Twenty-eight (28) . . . ."

d.      "This Deed of Trust is made for the purpose of securing the following: A. Performance of each agreement of Trustor contained herein; and B. Payment of the sum of $115,000 cash . . . pursuant to the terms contained in a Deed of Trust Promissory Note of even date herewith; C. Any and all sums Beneficiary may expend or advance in accordance herewith for the protection or preservation of the property covered by this Deed of Trust."

e.      The term of the Deed of Trust for purposes of AS 34.20.140–34.20.150 is 25 years, "unless the obligation is earlier satisfied."

f.      Mr. Williams must: "Protect and preserve [the] property and maintain it in good condition and repair." He must: "Comply with all laws, ordinances, regulations, covenants, conditions and restrictions affecting said property and not . . . commit any act upon or concerning said property in violation of the law." He must maintain insurance on the property, with the Beneficiary being a loss payee. He must: "Pay at least ten days before delinquency all taxes and assessments affecting said property . . . ."

g.      In the event of default all amounts owed become immediately due and payable. The Beneficiary may elect to sue upon the Promissory Note and to foreclose judicially per AS 09.45.170–09.45.220 or foreclose extra-judicially per AS 34.20.070–34.20.135, or it may foreclose judicially or extra-judicially without first suing on the Promissory Note.

[Between October 2010 and September 2011, Mr. Williams and KGB engaged in lengthy correspondence in which Mr. Williams asserted that the property was

owned by the federal government, and thus exempt from taxation, and KGB responded that Mr. Williams remained the record owner and was liable for property taxes.]

. . . .

## V.  DISCUSSION

### a.  Parties' Positions

Mr. Williams claims that the federal government has an interest in the improvements at 511 Stedman Street (house); he does not; and, the federal government's interest is exempt from KGB property taxation per AS 29.45.030 and KGB § 45.11.020.

The KGB claims that Mr. Williams is the record owner of the property at 511 Stedman Street, including the improvements (house); the federal government does not retain an ownership interest in the house by virtue of the DOT Note, the DOT, or the Grant Agreement; so the house is not exempt from KGB property taxation per AS 29.45.030 or KGB § 45.11.020.

### b.  Law

Article IX, section 5 of the Alaska Constitution provides that "Private leaseholds, contracts, or interests in land or property owned or held by the United States, the State, or its political subdivisions, shall be taxable to the extent of the interests."

KGB § 45.11.010 provides, in pertinent part, that:

> All real property in the borough . . . except such . . . property as is by law exempt from taxation, shall be annually assessed, and a tax thereon shall be annually levied and collected for school and municipal purposes, in the manner set forth herein.

KGB § 45.11.005 provides that:

> The term "real property" means land and improvements, all possessory rights and privileges appurtenant to the property, and includes personal property affixed to the land or improvements.

And that "improvements" means: "All buildings, structures, fences, landscaping and additions erected in or upon land."

KGB § 45.11.020(a)(8) provides that:

(a)  The following property is exempt from general taxation:

. . . .

(8)  Property of a political subdivision, agency, corporation, or other entity of the United States to the extent required by federal law; except that a private leasehold, contract, or other interest in property is taxable to the extent of that interest.

KGB § 45.11.030 provides that:

An interest, other than record ownership, in real property of an individual residing in the property is exempt from real property taxes if the property has been developed, improved, or acquired with federal funds for low-income housing and is owned or managed as low-income housing by the state building authority or a regional housing authority formed under AS 18.55.996.  This subsection does not prohibit the borough from receiving payments in lieu of taxes authorized under federal law.

Alaska Statute 29.45.030(a)(8) provides that:

(a)  The following property is exempt from general taxation:

. . . .

(8)  property of a political subdivision, agency, corporation, or other entity of the United States to the extent required by federal law; except that a private leasehold, contract, or other interest in the property is taxable to the extent of that interest unless the property is located on a military base or installation and the property interest is created under 10 U.S.C. 2871-2885 (Military Housing Privatization Initiative), provided that the leaseholder enters into an agreement to make a payment in lieu of taxes to the political subdivision that has taxing authority.

Alaska Statute 29.71.800 provides, in pertinent part, that:

(17) "property" means real and personal property;

. . . .

(19) "real property" means land and improvements, all possessory rights and privileges appurtenant to the property, and includes personal property affixed to the land or improvements.

Alaska Statute 34.15.010(a) provides, in pertinent part, that: "A conveyance of land . . . or interest in land, may be made by deed . . . ."

Alaska Statute 34.15.050 provides that: "A deed of quitclaim and release for the form in common use is sufficient to pass all the real estate which the grantor can convey by a deed of bargain and sale."[7]

Alaska Statute 34.20.110 provides that:

For the purposes of record, a deed of trust given to secure an indebtedness, shall be treated as a mortgage of real estate, and recorded in full in the book provided for mortgages of real property. The person who makes or executes the deed of trust shall be indexed as the "mortgagor" and the trustee and the beneficiary or cestui que trust, as the "mortgagees."

The Alaska Supreme Court has stated that:

We treat deeds of trust as identical to mortgages in almost all respects. In *Brand*, we stated: "A deed of trust is 'a mortgage in effect,' being only a somewhat different device for accomplishing the same purpose, creating a security interest

---

[7] *See Ellingstad v. State, Dep't of Natural Res.*, 979 P.2d 1000, 1004 (Alaska 1999) ("[A]ccording to AS 34.15.050, part of the statutory scheme governing conveyances, a quitclaim deed conveys all of the existing legal and equitable rights of the seller in the property described in the deed.").

in land . . . [A] deed of trust does not move title out of the trustor, but only creates a lien."[8]

The Alaska Supreme Court has recognized that:

A taxpayer claiming a tax exemption has the burden of showing that the property is eligible for the exemption. Furthermore, the courts must narrowly construe statutes granting such exemptions.[9]

## c. Decision

The court finds that the KGB's determination that Mr. Williams is the owner of the real property and improvements at 511 Stedman Street and that no portion of said property is exempt from KGB taxation is supported by substantial evidence[10] for five reasons.

First, the record reflects that Mr. Williams became the owner of record of the real property at 511 Stedman Street, and the improvements thereon, in 1991 by virtue of the quitclaim deed.

Second, Mr. Williams' ownership interest in the property (real and improvements) at 511 Stedman Street is subject to KGB property taxes per KGB § 45.11.010.

Third, the 2002 Grant Agreement provided that Mr. Williams would receive a federal grant which would pay for the demolition of the residence then on the real

---

[8]    *Young v. Embley*, 143 P.3d 936, 941-42 (Alaska 2006) (quoting *Brand v. First Fed. Sav. & Loan Ass'n of Fairbanks*, 478 P.2d 829, 831-32 (Alaska 1970)). *See also Belland v. O.K. Lumber Co.*, 797 P.2d 638, 640 n.4 (Alaska 1990) ("A deed of trust in Alaska is treated as a lien against the property, much like a mortgage.").

[9]    *Greater Anchorage Area Borough v. Sisters of Charity of the House of Providence*, 553 P.2d 467, 469 (Alaska 1976).

[10]    The court would make the same finding if the substantial evidence standard did not apply and de novo review is appropriate.

property at 511 Stedman Street and the building of a replacement residence. The Grant Agreement provided that he would not have to make any payments but would have to repay the entire grant amount ($115,000) if he sold the property during the first ten years of the grant term, and that the repayment amount would decrease by 10% every year thereafter. The Grant Agreement did not divest Mr. Williams of any of his ownership interest in the real property at 511 Stedman Street, or of any of his ownership interest in the present or future improvements on said property.

Fourth, Mr. Williams executed the 2002 DOT and DOT Note to implement the Grant Agreement. The DOT and the DOT Note contain repayment provisions similar to those in the Grant Agreement. Neither the DOT nor the DOT Note divest Mr. Williams of any of his ownership interest in the real property and improvements at 511 Stedman Street. Under Alaska law a deed of trust creates a security interest. There are no terms in this DOT, or the DOT Note, which show that the parties intended that the same created other than a security interest. To the contrary, the terms demonstrate that the intent was that the federal government would only have a security interest in the property. The limitations and requirements that are imposed are of the type generally imposed by a lender in order to protect the security interest.[11] The DOT expressly contemplates that the improvements financed through the Grant Agreement would be subject to taxation as it specifically provides that Mr. Williams is responsible for paying such taxes.[12]

---

[11] A contrary ruling would result in lenders being deemed owners of the security (real property and improvements) and thus responsible for the payment or related property taxes in the absence of an agreement with the debtor to the contrary.

[12] Mr. Williams argues that the Grant he received was for low-income recipients and that this fact somehow results in his not being responsible for that portion of the KGB property tax allocated to the improvements (the house). But the DOT
(continued...)

Fifth, given the above, the improvements located at 511 Stedman Street are not exempt from KGB taxation under KGB § 45.11.020(8) or AS 29.45.030(a)(8).[13]

## VI. CONCLUSION

The KGB decision that the improvements (house) located at 511 Stedman Street are not exempt from KGB taxation under KGB § 45.11.020(8) or AS 29.45.030(a)(8) is, for the reasons discussed above, affirmed.

IT IS SO ORDERED.

Dated at Ketchikan, Alaska this 28th day of September 2011.


/s/    Trevor N. Stephens
        Superior Court Judge

---

[12](...continued)
demonstrates that it was understood that the same would be taxed and agreed that he would be responsible for paying the taxes. The court also notes that he is able, under the terms of the Grant Agreement — DOT — and DOT Note — to possess and reside in the house without having to make any repayments unless and until he sells the property.

[13]     The court notes that Mr. Williams argued in his Amended Appellant's Reply that he is a Tlingit and the federal government has a special relationship with American Indians. To the extent that this is a separate argument, the court is not addressing the same because it was made in a reply and has not been adequately briefed. To the extent that the court must address this point, Mr. Williams has not shown how the same results in the federal government having an ownership interest in the improvements at issue or in his not having ownership of the same, subject to the DOT security interest.