Ruth **NICKELS**, Appellant and Cross–Appellee,

v.

Noel **NAPOLILLI** and Nancy Napolilli, Appellees and Cross–Appellants.

Nos. S–9243, S–9283.

Supreme Court of Alaska.

Aug. 17, 2001.

Rehearing Denied Oct. 25, 2001.

---

Richard H. Friedman and Les S. Gara, Friedman, Rubin & White, Anchorage, and Susan Orlansky, Jeffrey M. Feldman, and Ruth Botstein, Feldman & Orlansky, Anchorage, for Appellant and Cross–Appellee.

Robert B. Groseclose, Cook, Schuhmann & Groseclose, Inc., Fairbanks, and Joe M. Huddleston and Ronald H. Bussey, Hughes, Thorsness, Powell, Huddleston & Bauman, LLC, Anchorage, for Appellees and Cross–Appellants.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

Ruth Nickels performed farm chores for Noel and Nancy Napolilli in exchange for living in a cabin on their property and some monetary compensation. While she lived in

this cabin, Nickels injured both her arm and back. Because the Napolillis did not have workers' compensation insurance, Nickels pursued compensation for the injuries through a lawsuit that alleged breach of the employment contract. The trial court dismissed Nickels's claims, finding that the Alaska Workers' Compensation Act does not permit a breach of contract claim based upon the employer's failure to provide workers' compensation insurance. Nickels's appeal challenges that ruling. The Napolillis' cross-appeal challenges the superior court's determination that the workers' compensation law applies to this case. We affirm the superior court's dismissal of the contract claims, as well as the trial court's finding that Nickels was an employee covered by the workers' compensation statutes and its referral of the matter to the Alaska Workers' Compensation Board. We remand to the superior court to clarify its finding that Nickels's back injury occurred during the course and scope of employment.

## II. *FACTS AND PROCEEDINGS*

### A. *Facts*

Noel and Nancy Napolilli own and live on a forty-acre parcel of land in Fairbanks called "Isabella Creek Farm." The land has a house, a log cabin, and an assortment of farm structures. The Napolillis operate the farm as a small business, although they both work in full-time positions unrelated to the farm. Isabella Creek Farm sells animals, eggs, hay, farm equipment, and farm implements. The Napolillis deduct farm-related business expenses on their federal income tax return and list the business in the phone book and a farm products directory.

Noel Napolilli built a two-story log cabin home on the property near their primary residence in the mid–1980s. To obtain assistance with farm labor, the Napolillis established a cabin-for-chores exchange. Various people have lived rent-free in the cabin in exchange for performing farm chores.

In August 1989 Ruth Nickels responded to a newspaper advertisement placed by the Napolillis regarding the sale of calves. She went to Isabella Creek Farm, where she purchased a calf and spoke with Noel Napolilli about the farm operation. Noel Napolilli showed Nickels around the farm and told her about the cabin-for-chores arrangement. Nickels and her friend Mindy Johnson filled out an application and in November 1989 Noel Napolilli called Nickels to ask if she and Johnson had an interest in the cabin-for-chores arrangement. They did, and Nickels and Johnson entered into a written agreement with the Napolillis to occupy the cabin and work for eighteen months beginning in December 1989.

The agreement called for an average of eighty hours of labor per month, with excess hours compensated at five dollars per hour. The agreement also included a list of sixteen tasks and the seasons in which Nickels and Johnson were required to perform these jobs. It listed daily activities such as feeding and watering animals, seasonal activities such as harvesting and putting up hay, and periodic activities such as servicing equipment prior to use. Johnson left before the end of the agreement term, but Noel Napolilli and Nickels verbally agreed that Nickels would continue according to the prior written agreement.

Nickels and the Napolillis kept an extensive daily log of farm activities and projects. Nickels reported chores completed and the status of animals, and wrote periodic notes to the Napolillis. The Napolillis' entries included instructions to Nickels. Nickels also used a time clock to record hours worked on farm activities.

While living at Isabella Creek Farm, Nickels worked for other employers three to five days per week as a retail clerk or security guard. She also cared for her own animals on the farm, including dogs, calves, a horse, goats, and a lamb.

In June 1990 Nickels was instructed by Noel Napolilli to nail a board to the side of a shed. Since a fence paralleled the shed's wall, Nickels stood on an inverted bucket to reach over the fence and place the nails. Standing tip-toe on the bucket, Nickels slipped while starting to hammer a nail. She fell and a piece of wire from the fence impaled the back of her arm. This resulted in

a puncture wound at the bottom of the triceps muscle of her right arm.

Noel Napolilli assisted Nickels in cleaning and bandaging the wound immediately after the injury and over the course of the next few days. Nickels did not seek medical treatment until approximately six days after the injury, by which time her arm had become infected. At that time, Nancy Napolilli's father, a visitor on the farm, encouraged Nickels to go to the emergency room. The injury did not heal and Nickels's right arm was eventually amputated at the shoulder.

In October 1992, two years after the fall which injured Nickels's arm, Nickels injured her back. According to Nickels, the injury occurred when she lifted a bale of hay over a fence. However, she told the Napolillis and her doctor that she suddenly developed back pain when standing in her kitchen.

The Napolillis did not carry workers' compensation insurance for Nickels. In September 1992, after the arm injury but before the back injury, Nickels signed an agreement to release the Napolillis from any liability for her arm injury. On October 3, 1992, the date of her back injury, she signed an agreement to release the Napolillis from any liability for that injury, too.

In October 1992 Nickels and the Napolillis ended the cabin-for-chores arrangement. Nickels continued to live in the cabin, paying $400 per month to the Napolillis for rent. In May 1994 the Napolillis ended the rental relationship and filed an eviction action against Nickels.

### B. Proceedings in the Trial Court

Nickels filed suit against the Napolillis on September 27, 1994. The complaint included tort claims for hindering appropriate medical treatment and misrepresenting Nickels's rights to workers' compensation, and breach of contract claims for failing to provide workers' compensation benefits and medical care. Nickels sought compensatory and punitive damages.

The Napolillis sought summary judgment on the 1990 arm injury, claiming that the two-year tort statute of limitations and the release signed by Nickels barred the claim.

Nickels responded that a six-year statute of limitations should apply because the action arose out of a breach of the employment contract's implied clause requiring workers' compensation coverage. Nickels also asserted that the factual circumstances surrounding her signing of the release made it legally deficient. Superior Court Judge Niesje J. Steinkruger denied summary judgment on these issues, finding genuine issues of material fact as to whether Nickels's claim was barred by either the statute of limitations or the release.

The superior court held a bench trial to determine whether Nickels was an employee for the purposes of the Alaska Workers' Compensation Act. The superior court recognized that evidence pointed in both directions, but ultimately found that Nickels was an employee under the Act. The superior court also determined in pre-trial proceedings that both of Nickels's injuries arose out of, and in the course of, her employment.

A week before the scheduled jury trial, counsel for Nickels submitted revised jury instructions that shifted the focus of the case from negligence to breach of contract. In light of this change in position, the trial judge held a status conference. At that on-record conference, Nickels's counsel expressly stated that Nickels was abandoning her claims for negligence and misrepresentation. In response, the Napolillis moved to dismiss the case or, alternatively, to refer the case to the Alaska Workers' Compensation Board. They argued that no valid claims remained since Nickels had abandoned her negligence and misrepresentation claims. Judge Steinkruger granted the Napolillis' motion, dismissing Nickels's claims before the superior court and granting ninety days for Nickels to file her claim before the Alaska Workers' Compensation Board. Nickels appeals this ruling. The Napolillis cross-appeal the trial court's ruling that Nickels was an employee and that her injuries were work related, and that the statute of limitations does not bar Nickels's claim.

### III. DISCUSSION

#### A. Standard of Review

■ Many of the issues before us are matters of statutory interpretation. The inter-

pretation of a statute is a question of law; therefore, we use our independent judgment.[1] "Our duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[2]

■ Whether Nickels is appropriately considered an "employee" for the purposes of the workers' compensation statute is a mixed question of law and fact. We review the trial court's factual findings using the clearly erroneous standard,[3] and we apply de novo review to the legal determination of whether these facts amount to employment under the statute.[4]

B. *The Trial Court Did Not Err in Dismissing Nickels's Breach of Contract and Bad Faith Claims.*

1. *Alaska Workers' Compensation Act provisions establish an employee's remedies for work-related injuries.*

■ The Alaska Workers' Compensation Act[5] creates a system through which employers compensate employees injured on the job, irrespective of fault for the injury.[6] It is a "mutual arrangement of reciprocal rights between employer and employee, whereby both parties give up and gain certain advantages."[7] In exchange for guaranteed recovery for post-injury wage loss,[8] medical expenses,[9] and vocational rehabilitation services covered by the statute,[10] em-

ployees give up the opportunity to seek the full scope of tort or negligence damages.[11]

The Alaska Workers' Compensation Act establishes that "[t]he liability of an employer prescribed in AS 23.30.045 is exclusive and in place of all other liability of the employer."[12] The exclusivity of workers' compensation act remedies was a "keystone" of the development of workers' compensation systems such as Alaska's.[13] Employers and employees both give up certain rights for the greater good of widespread, no-fault insurance coverage for on-the-job injuries.[14]

Alaska Statute 23.30.045(a) provides that an employer "is liable for and shall secure the payment to employees of the compensation payable under [the Act]." When an employer fails to comply with the Alaska Workers' Compensation Act's requirement to secure payment of compensation to its injured employees, either through procurement of a workers' compensation insurance policy or through self-insurance, the statute offers an injured employee two options for seeking recovery. The Act offers employees whose employers have not provided workers' compensation benefits the choice of (1) claiming compensation through the procedures of the workers' compensation statute,[15] or (2) "maintain[ing] an action against the employer at law ... for damages on account of the injury or death."[16]

If the injured employee brings a claim before the Alaska Workers' Compensation

1. *See Cook v. Botelho,* 921 P.2d 1126, 1129 (Alaska 1996).

2. *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

3. *See Kilmer v. Dillingham City Sch. Dist.,* 932 P.2d 757, 763–64 (Alaska 1997). We will reverse only if we have a "definite and firm conviction that a mistake has been made." *Id.* at 764.

4. *See Moody–Herrera v. State, Dep't of Natural Resources,* 967 P.2d 79, 82 (Alaska 1998); *see also Dunlap v. Bavarian Village Condominium Ass'n,* 780 P.2d 1012, 1015 n. 9 (Alaska 1989) (standard of review for mixed findings of fact and law).

5. AS 23.30.005–.400.

6. *See* AS 23.30.045(a)-.045(b).

7. *Whitney–Fidalgo Seafoods, Inc. v. Beukers,* 554 P.2d 250, 253 (Alaska 1976).

8. *See* AS 23.30.175.

9. *See* AS 23.30.095.

10. *See* AS 23.30.041.

11. *See Wright v. Action Vending Co.,* 544 P.2d 82, 84–85 (Alaska 1975) (quoting *Smither & Co. v. Coles,* 242 F.2d 220, 222 (D.C.Cir.1957)).

12. AS 23.30.055.

13. *See Wright,* 544 P.2d at 84–85.

14. *See id.*

15. *See* AS 23.30.110.

16. AS 23.30.055.

Board,[17] that employee has available the same benefits that would have been provided if the employer had complied with the statute by having workers' compensation insurance.[18]

■ If, on the other hand, an injured employee chooses to bring a lawsuit against the employer under AS 23.30.055, the workers' compensation statute enhances the opportunity for recovery and removes many of the limitations on compensation ordinarily imposed. First, in an action at law against the non-compliant employer, the statute shifts the presumption of negligence. "[I]t is presumed that the injury to the employee was the first result growing out of the negligence of the employer and that the employer's negligence was the proximate cause of the injury; the burden of proof rests upon the employer to rebut this presumption of negligence." [19] Additionally, in a lawsuit under this provision, the employer does not enjoy the limitations on liability otherwise imposed by the workers' compensation statutory scheme.[20] Finally, an employer may not raise defenses of contributory or comparative negligence, negligence of fellow employees, or assumption of risk.[21] Thus, the workers' compensation statute, which carefully balances the rights and responsibilities of employees and employers,[22] tips the scales in favor of an injured employee when the employer does not provide workers' compensation benefits and the employee chooses to sue for damages for the injuries.[23] In this way, the Act allows the employee who has suffered injury resulting from the employer's negligence to recover damages above and beyond the compensation that would have been available had the employer provided workers' compensation insurance.

■ The workers' compensation statute specifies the two remedies for employees whose employers have failed to provide workers' compensation benefits.[24] We have recognized that "[i]n substituting certainty of compensation for the hazards of litigation of work-related injuries, it is too clear to require discussion that the [A]ct was intended to comprehend and govern all the interacting relations of employee, fellow employee and employer." [25] Therefore, the remedies offered by the workers' compensation statute supercede any common law remedies outside of the statutory scheme.[26]

17. *See* AS 23.30.110.

18. *See* AS 23.30.030(2).

19. AS 23.30.080(b).

20. *See* AS 23.30.080(c) ("The limits of liability do not apply when an action is brought under this section.").

21. *See* AS 23.30.055, .080(a); *Grothe v. Olafson,* 659 P.2d 602, 608–09 (Alaska 1983).

22. Because the legislature adopted the exclusivity provision of the Alaska Workers' Compensation Act from the federal Longshoremen's and Harbor Workers' Compensation Act, *Wright v. Action Vending Co.,* 544 P.2d 82, 84 (Alaska 1975), we have looked to cases interpreting that Act for legislative history of the exclusivity provision:

> The history of the development of statutes, such as this, creating a compensable right independent of the employer's negligence and notwithstanding an employee's contributory negligence, recalls that the keystone was the exclusiveness of the remedy. This concept emerged from a balancing of the sacrifices and gains of both employees and employers, in which the former relinquished whatever rights they had at common law in exchange for a

> sure recovery under the compensation statutes, while the employers on their part, in accepting a definite and exclusive liability, assumed an added cost of operation which in time could be actuarily measured and accurately predicted; incident to this both parties realized a saving in the form of reduced hazards and costs of litigation.

*Id.* at 84–85 (quoting *Smither & Co. v. Coles,* 242 F.2d 220, 222 (D.C.Cir.1957)).

23. *See* AS 23.30.055.

24. *See id.*

25. *Gordon v. Burgess Constr. Co.,* 425 P.2d 602, 605 (Alaska 1967) (quoting *Frick v. Horton,* 21 A.D.2d 212, 250 N.Y.S.2d 83 (1964), *aff'd,* 15 N.Y.2d 1018, 260 N.Y.S.2d 26, 207 N.E.2d 618 (1965)).

26. *See Gordon,* 425 P.2d at 605 (holding that "the remedies provided by a workmen's compensation act are intended to be in lieu of all rights and remedies as to a particular injury whether at common law or otherwise."); *see also* 3 Norman J. Singer, *Sutherland Statutory Construction* § 61.01 (5th ed. 1992) ("If a change is to be made in the common law, the legislative purpose to do so must be clearly and plainly expressed.").

## 2. *A worker's lawsuit under AS 23.30.055 must be a tort action for the underlying injury.*

When an employer breaches the duty to provide workers' compensation benefits, the Alaska Workers' Compensation Act permits the worker to file a lawsuit against the employer for "damages on account of the injury or death." [27] The Act's language reflects an intent to provide a remedy for a worker's personal injuries. It specifies the following relief when an employer has failed to provide compensation:

[I]f an employer fails to secure payment of compensation as required by this chapter, *an injured employee ... may elect to claim compensation under this chapter, or to maintain an action against the employer at law or in admiralty for damages on account of the injury or death.* In that action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of the employment, or that the injury was due to the contributory negligence of the employee.[28]

In her complaint, Nickels initially claimed that the Napolillis "actively and intentionally misrepresented ... her right to receive workers' compensation benefits, including medical care." Yet, on the eve of trial, Nickels abandoned all of her tort claims. Instead, she relied solely on contract theories for her claims against the Napolillis, alleging that the Napolillis breached their employment contract when they failed to obtain workers' compensation insurance and failed to pay for medical care and lost wages after her injuries.[29] Nickels's claim presumes that the lack of workers' compensation insurance,

in itself, is an "injury" of the sort that can be compensated by a lawsuit. We disagree.

■ The statute defines "injury" as "accidental injury or death arising out of and in the course of employment, and an occupational disease or infection which arises naturally out of the employment or which naturally or unavoidably results from an accidental injury." [30] When a worker chooses the remedy of suing an employer who has failed to provide workers' compensation benefits, the purpose is to rectify the same harm that the workers' compensation statute as a whole remedies—injury or death resulting from an on-the-job accident. A tort action is the common law cause of action that can address this harm.

■ Moreover, other provisions of the Act support the interpretation that a common law action under AS 23.30.055 is limited to tort claims for the underlying injury. Alaska Statute 23.30.080 clarifies that if an employer fails to buy insurance it "may not escape liability for *personal injury or death* sustained by an employee when the injury sustained arises out of and in the usual course of employment because [of negligence of co-employees, assumption of risk, or contributory or comparative negligence]." [31] Alaska Statute 23.30.020 also explicitly refers to "personal injuries" as the injuries for which the Alaska Workers' Compensation Act provides a remedy. This section states that "every contract of hire shall be construed as an agreement on the part of the employer to pay and on the part of the employee to accept compensation in the manner provided in this chapter for *all personal injuries sustained.*" [32] Thus, when an employer breaches its duty to provide workers' compensation

---

27. AS 23.30.055.

28. *Id.* (emphasis added).

29. Nickels bases her breach of contract claim on her agreement with the Napolillis, and AS 23.30.020, which inserts the provisions of the workers' compensation statute into every employment contract. AS 23.30.020 states:

This chapter constitutes part of every contract of hire, express or implied, and every contract of hire shall be construed as an agreement on the part of the employer to pay and on the part

of the employee to accept compensation in the manner provided in this chapter for all personal injuries sustained.

30. AS 23.30.395.

31. AS 23.30.080(a) (emphasis added); *see also Grothe v. Olafson*, 659 P.2d 602, 608–09 (Alaska 1983) (holding that under AS 23.30.055 and AS 23.30.080 an employer may not assert defense of comparative negligence).

32. AS 23.30.020 (emphasis added).

benefits, the workers' compensation law only authorizes the employee to recover for personal injuries through a tort action.

█ And when the employee chooses to file a lawsuit, as opposed to pursuing an administrative action, that lawsuit provides a remedy for the same "accidental injury ... arising out of and in the course of employment"[33] as would be compensated through an administrative action. The lawsuit then cannot, as Nickels claims, compensate for the "injury" of the breached obligation to provide insurance or comparable benefits. Rather, the cause of action arises from the underlying accident or personal injury and thus requires a tort claim.

3. *Nickels's breach of contract and breach of good faith and fair dealing claims are neither authorized nor necessary under the workers' compensation statute.*

█ The remedies established by the Alaska Workers' Compensation Act are the only available remedies for an employer's failure to provide workers' compensation benefits. Moreover, there would be no contractual breach if there were no statutory requirement to provide workers' compensation. Professor Larson states that "the exclusiveness principle results in barring actions for covered injuries even though the plaintiff casts his actions in the form of a breach of some kind of contract."[34] The employer's failure to provide workers' compensation insurance does not create a separate contract cause of action, even though the obligation to provide workers' compensation insurance is incorporated into every employment contract.[35] Because the Napolillis' obligation to provide workers' compensation insurance is only incorporated into the contract between Nickels and the Napolillis by virtue of the workers' compensation statute, the remedies offered by the workers' compensation statute are exclusive.

█ The remedy for a successful breach of contract action puts the non-breaching party in the position that it would have been in had the breach not occurred. "The purpose of awarding damages for a breach of contract is to put the injured party in as good a position as that party would have been had the contract been fully performed."[36] Thus, the contract remedy for a breach of the obligation to provide workers' compensation insurance would place the worker in the same position as if the employer had provided the required insurance or benefits. The worker would be entitled to compensation for lost wages[37] and medical expenses,[38] as well as vocational rehabilitation benefits.[39]

An Alaska Workers' Compensation Board proceeding results in determination of compensation owed to the employee according to the Act.[40] As this is the amount the employee would have received if workers' compensation insurance or benefits had been provided by the employer, it would also represent the complete contract remedy for an employer's failure to provide workers' compensation insurance or benefits.[41] Thus, an administrative action achieves the same result as would a breach of contract action. The administrative remedy, however, is only one of the two

---

33. AS 23.30.395(17) (defining "injury").

34. 6 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 65.38 (1999).

35. *See* AS 23.30.020.

36. *Guard v. P & R Enters.*, 631 P.2d 1068, 1071 (Alaska 1981); *see also* Restatement (Second) of Contracts § 344(a) (1979).

37. *See* AS 23.30.175.

38. *See* AS 23.30.095.

39. *See* AS 23.30.041.

40. *See* AS 23.30.175–.225.

41. Nickels suggests reasons why the employee may prefer an action at law to an action before the Board. For example, a lawsuit concludes with a judgment, whereas Nickels suggests that an action before the Workers' Compensation Board may result in years of entanglement with the administrative bureaucracy. Additionally, she contends that a lawsuit offers the possibility of punitive damages. Where, as here, tort and negligence causes of action have been waived, such a preference does not override the statute's explicit remedies for either a suit at law for tort claims or a proceeding before the Alaska Workers' Compensation Board.

options available under AS 23.30.055: an employee may also sue the employer for damages resulting from the underlying injury sustained.[42]

Nickels's further claim that the Napolillis breached the implied covenant of good faith and fair dealing fails for the same reasons as her contract claim. Nickels proposed a jury instruction setting out this claim:

> Under state law, Ruth Nickels had the right to obtain reasonable and necessary medical treatment at her employer's expense for any on-the-job injuries, the right to select a treating doctor without interference from her employer, and the right to receive compensation for any time she was unable to work due to her injuries.

> Intentionally violating state law, or intentionally attempting to deprive an employee of rights guaranteed by state law would be a violation of the obligation of good faith and fair dealing.

This cause of action presents essentially the same uncontested allegation underlying the breach of contract claims: the Napolillis failed to provide workers' compensation benefits or insurance. Because the obligation to provide benefits is imposed by the workers' compensation statute, it can be remedied only in a manner prescribed by that statute. That the Napolillis arguably intentionally violated state law or tried to deprive Nickels of the benefits to which she was entitled does not change this outcome.

In summary, the trial court did not err in dismissing Nickels's claims for breach of contract and breach of the implied covenant of good faith and fair dealing. Although Nickels filed a suit alleging tort causes of action,

she abandoned all tort claims before trial. She therefore abandoned the opportunity to take advantage of the statutory presumption of negligence and abrogation of many defenses to negligence. While Nickels's complaint also included contract-based causes of action, these claims cannot sustain a separate lawsuit against Nickels's employer. As the trial court concluded, Nickels's only remaining legal option is to have her claims heard before the Alaska Workers' Compensation Board. The trial court granted Nickels a period of ninety days to file her claim before the Alaska Workers' Compensation Board; that period has been tolled pending resolution of this appeal.[43]

C. *The Trial Court Did Not Err in Finding that Nickels Is an Employee Covered Under the Alaska Workers' Compensation Act.*

On cross-appeal, the Napolillis argue that the Alaska Workers' Compensation Act's provisions do not apply because Nickels was not an "employee" for the statute's purposes. The superior court held a bench trial on the threshold issue of whether the workers' compensation statute applied to the facts of this case, and determined that Nickels was an employee under Alaska's workers' compensation law.

The Alaska Workers' Compensation Act covers "disability or death of an employee."[44] The Act defines "employee" as "an employee employed by an employer."[45] An "employer" is "a person employing one or more persons in connection with a business or industry coming within the scope of this chapter and carried on in this state."[46] To

---

42. See AS 23.30.080; *see also supra* notes 19–23 and accompanying text.

43. The Napolillis assert that Nickels may not bring a tort claim for injury to her arm because the two-year limitations period had elapsed before she filed the claim. Since we determine that Nickels may not proceed with an action at law, the statute of limitations issue is moot. The superior court's order dismissing Nickels's claims before that court acknowledged that Nickels may bring a claim for workers' compensation benefits before the Alaska Workers' Compensation Board. The trial court found that because "plaintiff does not have a contract action option against her uninsured employer under AS

23.30.055[,][t]he only remedy left available to plaintiff is her claim for workers' compensation benefits before the Board." The superior court dismissed the case before it and granted Nickels 90 days to file her claim with the Board. Thus, we need not decide whether Nickels's tort claims would have been barred by the statute of limitations.

44. AS 23.30.010.

45. AS 23.30.395(12).

46. AS 23.30.395(13).

determine whether the relationship between Nickels and the Napolillis falls within the scope of the Act, we must determine whether Nickels was an employee, and then determine whether the work she performed was within the scope of the Act.

### 1. *Nickels and the Napolillis had an employee-employer relationship.*

■■■ An express or implied contract or agreement of employment must exist for there to be an employee-employer relationship.[47] The trial court found that Nickels and the Napolillis entered into an agreement by which Nickels provided at least eighty hours of work per month for the Napolillis. In exchange, the Napolillis compensated Nickels by providing a log home for her to live in and a place for her to keep her animals.[48] The Napolillis characterize this agreement as a "rental agreement," while Nickels characterizes it as a employment relationship.

Substantial evidence supports the trial court's finding that the agreement between Nickels and the Napolillis constitutes an employment relationship. The application filled out by Nickels and Johnson refers to the position as a "job" and includes questions about relevant job experience. The agreement between Nickels and the Napolillis specifies the number of hours of labor required per month and a compensation rate for hours worked beyond that amount. The agreement also lists sixteen tasks for Nickels to perform, and reserves the Napolillis' right to terminate the agreement "if labor is not performed as indicated . . . or if said labor is not performed in a conscientious manner to [the] Napolilli[s'] expectations." That the document also contains terms commonly found in a residential rental agreement[49]

does not diminish the legal significance of the agreement as an employment agreement.

■■ Although the trial court found that Nickels and the Napolillis had an employment contract defining the terms of their relationship, the existence of a contract does not end the inquiry. The legal determination of whether an employee-employer relationship exists relies, in part, on consideration of the character of the "employee's" work and the relationship of work to the "employer's" business.[50] We have explained elements of this "relative nature of the work" test in *Searfus v. Northern Gas Company:*

> In evaluating the character of the claimant's work, the trier of fact is to consider the degree of skill involved, the degree to which it is a separate calling or business, and the extent to which it can be expected to carry its own accident burden. Concerning the relationship of the claimant's work to the purported employer's business, the trier of fact is to consider how much it is a regular part of the employer's regular work, whether it is continuous or intermittent, and whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of a particular job.[51]

The trial court made the following findings relevant to whether Nickels was the Napolillis' employee:

> (a) Noel and Nancy Napolilli exercised control and direction over the manner and means that [Nickels] performed work by their verbal and written instructions, (b) [Nickels] could have terminated her work status, (c) there was extensive supervision by Noel Napolilli, (d) the Napolillis[ ] provided tools and equipment of substantial value for [R]uth Nickels to accomplish

---

47. *See Childs v. Kalgin Island Lodge*, 779 P.2d 310, 313 (Alaska 1989); *City of Seward v. Wisdom*, 413 P.2d 931, 935 (Alaska 1966).

48. While we have not addressed the issue directly, many jurisdictions hold that an employment relationship exists where a worker receives board or housing in exchange for her labor. *See* 3 Larson, *supra* note 34, § 65.03[1].

49. The agreement includes terms that relate to damage deposit, utilities, overnight guests, sub-

leasing, use of the property, and trash removal. Moreover, the agreement characterizes the parties as "owners" and "occupants."

50. *See Ostrem v. Alaska Workmen's Comp. Bd.*, 511 P.2d 1061, 1063 (Alaska 1973); *Searfus v. Northern Gas Co.*, 472 P.2d 966, 969 (Alaska 1970).

51. 472 P.2d at 969.

farm work, (e) the work "payment" was based on 80 hours per month, with records documenting work time, and (f) the contract was initially written and subsequently oral.

Ample evidence supports these factual findings, and they are not clearly erroneous.

■ The Napolillis suggest that the relationship of Nickels's work to the Napolillis' business weighs in favor of not considering Nickels an employee. They urge us to consider that because the farm was a lifestyle choice and not a primary income source, it ought not bear the costs of injuries incurred in furtherance of the Napolillis' and Nickels's farming activities. We have recognized Professor Larson's distinction between consumptive activities which should not bear the burden of workers' compensation insurance, and productive business activities, which should.[52] A homeowner who hires someone to perform an odd job for his own benefit is not appropriately considered an employer under the workers' compensation statute.[53] A business, unlike a homeowner, can pass the cost of workers' compensation insurance on to the consumers of the business's service or product. The superior court found that "[t]he 'business' of Isabella Creek Farm was not the primary source of income for the Napolillis[;] however, the work that Ruth Nickels performed was a regular part of the regular work of Isabella Creek Farm business." Because Nickels's work for Isabella Creek Farm and the Napolillis furthered the business, it is therefore within the scope of the workers' compensation system.

2. *The work performed by Nickels is not otherwise exempt from the workers' compensation statute.*

■ The Alaska Workers' Compensation Act exempts several categories of workers from its scope.[54] The workers' compensation statute does not cover "harvest help and similar part-time or transient help."[55] The evidence in the record does not support the Napolillis' assertion that Nickels was harvest help. Nickels worked year-round performing a variety of tasks and was not hired seasonally to assist with specific, discrete tasks. While many states exempt farm workers from workers' compensation statutes,[56] the Alaska legislature has not chosen to do so.[57] Therefore, the Napolillis' attempt to equate all farm labor with "harvest help" goes against legislative intent and is not supportable under the law. Similarly, evidence of Nickels's regular and continuous work for the Napolillis indicates that she was not part-time help exempt from the workers' compensation laws.

Finally, the Napolillis suggest that homesteaders with small family farms are exempted from the Alaska Workers' Compensation Act under AS 23.30.230(b). That section states: "The exclusion of certain persons under (a) of this section may not be construed to require inclusion of other persons as employees for purposes of compensation under

52. *See Kroll v. Reeser*, 655 P.2d 753, 757 (Alaska 1982) ("the policy question is whether Kroll's construction activity, either by itself or as an element of his rental activities, was a profit-making enterprise which ought to bear the costs of injuries incurred in the business, or was the construction activity simply a cost-cutting shortcut in what was basically a *consumptive* and not a *productive* rol[e]") (emphasis in original).

53. *See* 4 Larson, *supra* note 34, § 50.21.

54. *See* AS 23.30.230(a) (exempting from coverage, for example, part-time baby-sitters, cleaning people, harvest help and similar part-time or transient help, sports officials officiating at non-professional events, entertainers employed on a contractual basis, commercial fishers, certain taxicab drivers, and some public assistance recipients engaged in certain work activities).

55. AS 23.30.230(a)(3). "Part-time help" is defined in the Administrative Code as "a person who on an intermittent, irregular, non-continuous basis performs work which is either not an integral part of the regular business of the beneficiary of the work or which is not in the regular business, profession or occupation of the worker." 8 Alaska Administrative Code (AAC) 45.900(c)(1) (1988) (establishing regulatory guidelines for the Alaska Workers' Compensation Board).

56. *See* 4 Larson, *supra* note 34, § 53.10.

57. *See generally Gordon v. Burgess Constr. Co.*, 425 P.2d 602, 603–04 (Alaska 1967) (detailing legislative history of workers' compensation statutes in Alaska).

this chapter."[58]  The Napolillis cite no persuasive authority for their argument that this section expands the specifically delineated exceptions.  As Nickels points out, "Alaska's statutory workers' compensation scheme unambiguously appoints the legislature, not the courts, with the duty of defining exempt categories of employees," and the legislature did not exempt farm workers such as Nickels.  As Nickels's job is not specifically exempted from the workers' compensation statute, the determination of Nickels's status as an employee based on the "relative nature of the work" test controls, and Nickels was appropriately considered an employee covered under the Act.

### D.  *The Trial Court Properly Determined that the Napolillis' Motion for Reconsideration of Summary Judgment in Nickels's Favor Was Moot.*

After the superior court conducted a bench trial regarding whether Nickels was the Napolillis' employee for workers' compensation purposes, it ruled that both Nickels's arm injury and back injury occurred within the course and scope of her employment with the Napolillis and granted Nickels's motion for summary judgment on liability.  It is not disputed that the arm injury occurred when Nickels was performing a farm chore.  Judge Steinkruger determined that because Nickels resided at the work site as a part of her employment and because the back injury occurred on the work site, that injury also "ar[ose] out of and in the course of employment."[59]

The Napolillis sought reconsideration of this summary judgment ruling, arguing that the trial court overlooked the fact that the employment relationship had ended before the back injury occurred.  After the trial court dismissed the case and referred it to the Alaska Workers' Compensation Board, Judge Steinkruger ruled that the reconsideration motion was moot.[60]

Once the trial court determined that Nickels's abandonment of her tort claims left her with no tenable claim at law—so that Nickels's only remaining option was to pursue her workers' compensation claims—the trial court properly deferred deciding any remaining matters relating to the merits of Nickels's administrative claims.  Thus, to the extent that any issues relating to the merits of Nickels's workers' compensation claims were not finally resolved by the trial judge in her determination of whether Nickels had a tenable action at law, they must be left to the Alaska Workers' Compensation Board for resolution.  The trial court therefore properly denied on mootness grounds the Napolillis' motion for reconsideration of the summary judgment ruling on the issue of work-relatedness of Nickels's back injury.

## IV.  CONCLUSION

Because Nickels's breach of contract claims rely upon duties created by the Alaska Workers' Compensation Act, and because the Act provides an adequate remedy for that breach and does not permit a separate suit for breach of contract, we AFFIRM the superior court's dismissal of those claims.  We also AFFIRM the superior court's determination that Nickels was an employee of the Napolillis for the purposes of the Alaska Workers' Compensation Act and therefore REMAND to the trial court to allow Nickels to pursue her claims before the Workers' Compensation Board.

---

58.  AS 23.30.230(b).

59.  The superior court applied the "remote-site" doctrine to make its ruling.  *See generally Doyon Universal Servs. v. Allen,* 999 P.2d 764, 768–69 (Alaska 2000) (discussing remote-site doctrine).

60.  A claim is moot "if the party bringing the action would not be entitled to any relief even if they prevail[ed]."  *Maynard v. State Farm Mut. Auto. Ins. Co.,* 902 P.2d 1328, 1329 n. 2 (Alaska 1995).