*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| YONG KANG, d/b/a LEE'S MASSAGE, | ) ) ) | Supreme Court No. S-16560 |
| Appellant, | ) ) ) | Alaska Workers' Compensation Appeals Commission Nos. 15-023/16-001 |
| v. | ) ) | O P I N I O N |
| ALEXANDER MULLINS and STATE OF ALASKA, WORKERS' COMPENSATION BENEFITS GUARANTY FUND, | ) ) ) ) ) ) | No. 7245 – May 11, 2018 |
| Appellees. | ) ) ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission.

Appearances: J. John Franich, Franich Law Office, LLC, Fairbanks, for Appellant. No appearance by Appellee Alexander Mullins. Notice of nonparticipation filed by Siobhan McIntyre, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Appellee State of Alaska, Workers' Compensation Benefits Guaranty Fund.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

A woman who runs a business in the home she rents from her son asked a neighbor for help with major home repairs in exchange for a used pickup truck. The neighbor injured his wrist while working on the house. A few days later the two had a dispute and terminated their arrangement, the woman paying her neighbor $500 for his work.

The neighbor later sought medical treatment for his wrist; he also filed a report of injury and a workers' compensation claim with the Alaska Workers' Compensation Board. The woman denied liability on several grounds, but the Board decided, after a hearing, that the woman was her neighbor's employer for purposes of the Alaska Workers' Compensation Act. The woman appealed to the Alaska Workers' Compensation Appeals Commission, which affirmed the Board's decisions. We hold, however, that the evidence did not support a finding that the woman was her neighbor's employer, and we therefore reverse the Commission's decision.

## II. FACTS AND PROCEEDINGS

### A. Factual Background

Yong Kang lived in North Pole and rented a house from her son Benjamin. She once owned the house, but she sold it to Benjamin about nine months before the events underlying this dispute, because, as she explained, she was getting old and did not know how much longer she would be around. Kang lived in the house with her business partner, Chong Sik Kim. The two operated a massage business in the house called Lee's Massage, and both had business licenses under that name.

Alexander Mullins lived nearby. He met Kang when he bought his house in 2004, and the two of them became friends. Mullins estimated that in the 10 or 11 years preceding this dispute he had helped Kang with work on the house about 15 times.

He testified that she had always taken care of him, and he frequently stopped by her house to check on her on the way to or from his mailbox. In early 2015, when Mullins was retrieving his mail, Kang approached him and asked if he could help repair her roof. After some discussion, Mullins agreed.

The repair job began in May, when Mullins arranged for several acquaintances to help tear off the old roof. Mullins himself had a full-time job as a small engine mechanic, which continued throughout the time he worked on the house. Kang paid all the workers directly. At some point it became apparent that the roof was not the only problem with the house; it also needed to be leveled, and Mullins agreed to do that work too. According to Mullins, he injured his wrist during the leveling while using a hydraulic jack, though he did not immediately tell Kang about the injury.

Soon afterwards, the two had a dispute about a used pickup truck that, according to Mullins, Kang had promised him as part of the payment for his work. The parties ended their working relationship with an agreement signed on May 17, 2015, by which Mullins accepted $500 "for all services & work on the roof of the massage parlor." This was the end of Mullins's participation in the repair project.

A few weeks later, on June 1, 2015, Mullins went to the emergency room complaining of pain in his wrist. He filed a report of injury with the Board the following day reporting the date of injury as May 19, 2015, and naming "Lee's Oriental Massage" as his employer. Lee's Massage controverted benefits, denying that Mullins was its "employee" as that term is defined in the Alaska Workers' Compensation Act. It also contended that it was not an "employer" as defined in the Act.

**B.      Board And Commission Proceedings**

Because neither Kang nor Lee's Massage had workers' compensation coverage,[1] the Workers' Compensation Benefits Guaranty Fund became a party to the claim. The Board held a hearing in late August 2015. Mullins represented himself; Kang was represented by counsel; and the Fund's adjuster represented the Fund and cross-examined some witnesses.

There was conflicting evidence about how the arrangement for Mullins's work came about, who controlled the work and the hiring, who provided tools, how the injury happened, and what provoked the dispute that ended Mullins's work. Mullins described the work as "doing [Kang] a favor as a friend trying to help her out."[2] When the Board chair asked him why he thought he was an employee of Lee's Massage, he answered, "Well, if . . . I came down and asked you to help me build a garage, . . . I guess that you would be my employee." He added, "[E]ven if I only hired you for the day, I'm still your boss for the day, period." But on cross-examination he disavowed an employment relationship with Kang, saying that, both at the time of the hearing and when the parties first discussed the job, he did not "identify" himself as an employee and adding, "I never signed no paperwork from [Kang]. I never filled out an application for her. I never filled out a W-2 [sic] for her."

---

[1]      Lee's Massage was not required to have coverage under the Act as long as it had no employees, because only an employer as defined in the Act is required to secure payment of compensation for its employees. AS 23.30.045(a), .395(20). "A person who is a sole proprietor, or a member of a partnership, may elect coverage as an employee under [the Act]"; if the person elects coverage as an employee, she is not entitled to the presumption of compensability and "bears the burden of proof of the validity of the claim." AS 23.30.239(a)-(c).

[2]      Kang agreed with this characterization of the arrangement.

The Board decided first that Yong Kang d/b/a Lee's Massage had entered into an employment contract with Mullins. It then applied its regulatory "nature of the work" test[3] to the facts and decided that Mullins was not an independent contractor but an employee of Lee's Massage, though characterizing this decision as "a relatively close call." The Board concluded that Mullins's injury arose out of and in the course of his employment with Lee's Massage.[4] In what it labeled an interlocutory order, the Board required "Yong Kang d/b/a Lee's Massage . . . to pay directly to Claimant and his medical providers any and all benefits to which he is currently entitled under the Act unless and until Lee's controverts his right to benefits for reasons other than those addressed in this decision and order." It reserved jurisdiction "to resolve any disputes over specific benefits" but did not order that any specific benefits be paid.

Lee's Massage filed an appeal with the Commission in September but did not immediately seek a stay.[5] The Commission, seeing that the Board's order purported to be interlocutory, issued a short decision determining that the Board decision was in

---

[3]     8 Alaska Administrative Code (AAC) 45.890 (2011). This regulation encompasses elements of "the relative-nature-of-the-work test," *id.*, which we first adopted in *Searfus v. N. Gas Co.*, 472 P.2d 966, 969 (Alaska 1970). In *Searfus* we set out factors Larson's treatise considered relevant in determining status as an employee under the Act. *Id.* (citing 1A ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 43.52 (1967)); *see also Ostrem v. Alaska Workmen's Comp. Bd.*, 511 P.2d 1061, 1063 (Alaska 1973) (discussing application of test to distinguish independent contractors from employees).

[4]     The Board explained the discrepancy in the date of injury and Mullins's last day of work by finding that Mullins was "a 'poor historian,' meaning he confuses dates, but is otherwise credible."

[5]     Its first stay request was made more than two months after the first Board decision.

fact final and inviting Mullins or the Fund to seek dismissal of the appeal if either wanted to. Neither did.

The Board held a second hearing on December 3 after Mullins complained that Lee's Massage had not paid him or his medical providers. The Board issued a supplemental order declaring Lee's Massage in default of its order only with respect to temporary total disability (TTD) benefits because Mullins had not submitted his medical bills correctly. Lee's Massage filed a second notice of appeal and a second motion for a stay, and the Commission consolidated the cases and issued a partial stay. The Fund paid TTD benefits to Mullins and authorized some medical care as well. The Fund participated in the Commission appeal but only briefed issues related to the supplemental order.

Before the Commission, Lee's Massage contended that Mullins was not working for Kang or Lee's Massage "in connection with a business or industry" as that phrase is used in the Act,[6] focusing on a distinction we have made — in reliance on Larson's treatise — between "productive" and "consumptive" activities.[7] Its argument related to the default order was that Lee's Massage was not Mullins's employer. Mullins did not file a brief.

---

[6] *See* AS 23.30.395(20) (defining *employer* as including "a person employing one or more persons in connection with a business or industry coming within the scope of [the Act]").

[7] *Kroll v. Reeser*, 655 P.2d 753, 757 (Alaska 1982) (citing 1C ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 50.21, at 9-10 to 9-71 & nn.4-5 (1980)); *see also Gaede v. Saunders*, 53 P.3d 1126, 1127 (Alaska 2002) (quoting *Kroll*, 655 P.2d at 757).

The Commission affirmed the Board's decision. It discussed in detail one of the cases Lee's Massage relied on, *Kroll v. Reeser*,[8] noting *Kroll*'s factual similarity to this case: both involving construction work on a residence that was used to generate income. The Commission interpreted *Kroll* to mean that "when an individual is injured while performing work under such a contract, whether the contract should be considered to be 'in connection with a business or industry' depends on the totality of the circumstances, and not merely on the degree to which the structure is used for business purposes." The Commission looked at the way "maintenance work on business premises" is discussed in Larson's treatise and decided that "the activities at issue in this case go well beyond routine maintenance or repair." It observed that the project "might be characterized as a real estate improvement project rather than as maintenance or repair ancillary to Ms. Kang's massage parlor business." It noted the lack of evidence "that the roof leaks that were the genesis of the project affected the business portion of the premises at all, much less that Ms. Kang had a business purpose for undertaking a major renovation of the structure."

The Commission nonetheless concluded that the Board was correct in determining that Mullins was an employee of Kang and Lee's Massage. The Commission noted Lee's Massage's argument that "[i]f anyone employed Mullins in connection with a business or industry (rental property), it was Benjamin Kang, not Yong Kang." But the Commission did not consider this relevant to the question on appeal, because it was not being asked to choose between Kang and her son as Mullins's employer. The Commission characterized "the issue [as] whether the employment was in connection with a business or industry." The Commission recognized the anomaly in

---

[8] 655 P.2d 753.

this case that "the putative employer, Yong Kang, hired an individual to perform major construction work on a structure she did not own and which she apparently had no legal obligation to maintain." It construed the evidence as showing that Kang was acting in some type of agency relationship on behalf of her son and decided that because the son was aware Mullins was going to work on the house and "acquiesced in" that plan, the work was done in connection with a business or industry. It then affirmed the Board's decision that Yong Kang d/b/a/ Lee's Massage was Mullins's employer under the Act.

Kang appeals. Neither Mullins nor the Fund participated in this appeal.

## III.   STANDARDS OF REVIEW

In an appeal from the Alaska Workers' Compensation Appeals Commission, we review the Commission's decision rather than the Board's.[9] "Whether [a claimant] is appropriately considered an 'employee' for purposes of the workers' compensation statute is a mixed question of law and fact."[10] "We independently review the Commission's conclusion that substantial evidence in the record supports the Board's factual findings by independently reviewing the record and the Board's findings."[11] We review de novo "the legal determination of whether the[] facts [about employment status] amount to employment under the statute."[12]

---

[9]     *Humphrey v. Lowe's Home Improvement Warehouse, Inc.*, 337 P.3d 1174, 1178 (Alaska 2014).

[10]     *Nickels v. Napolilli*, 29 P.3d 242, 247 (Alaska 2001).

[11]     *Humphrey*, 337 P.3d at 1178.

[12]     *Nickels*, 29 P.3d at 247.

## IV. DISCUSSION

### It Was Error To Conclude That Yong Kang d/b/a Lee's Massage Was Mullins's Employer Under The Act.

The only issue Kang has raised on appeal is whether Mullins was an "employee" of Lee's Massage as that term is defined in the Act. This is a mixed question of law and fact, and Kang asserts that the facts are "undisputed," which we take to mean that she no longer disputes them. Whether those facts "amount to employment under the statute" is a purely legal issue.[13]

The Act requires employers to provide workers' compensation coverage for their employees,[14] but not all workers are covered by the Act. The Act explicitly exempts from coverage people who work in some casual employment relationships, such as part-time baby-sitters, "harvest help and similar part-time or transient help," and some sports officials, to name a few.[15] But the definition of "employer" in the Act is broad: "the state or its political subdivision or a person employing one or more persons in connection with a business or industry coming within the scope of this chapter and carried on in this state."[16] The definition of "employee" is also broad: "an employee employed by an employer as defined in [AS 23.30.395(20)]."[17]

---

[13] *Id.*

[14] AS 23.30.075.

[15] AS 23.30.230.

[16] AS 23.30.395(20).

[17] AS 23.30.395(19).

Kang discusses three of our decisions that in her view show the Commission's error: *Gaede v. Saunders*,[18] *Nickels v. Napolilli*,[19] and *Kroll v. Reeser*.[20] She contends that she was merely a consumer of Mullins's construction activity for several reasons: she was a tenant; she had a massage business rather than the type of business for which major building repairs are productive activities, such as real estate, construction, or property development; and the building was used not just for her business but as her residence as well. As Kang puts it, her business "derived no profit from Mullins's work on Benjamin Kang's building." Because her connection with Mullins's work could only be consumptive and not productive, she concludes that she was not Mullins's employer as we have construed the Act. We agree with her argument.

In *Kroll* we considered who, for purposes of the Act, was the employer of a worker injured during construction of a four-plex that was intended both to house the owner's family and to provide him with rental income from the other units.[21] The owner had engaged the services of a contractor licensed in another state, who happened to be in Alaska for the summer, as well as "one or two other people."[22] The contractor's son was injured while working on the four-plex and sought workers' compensation benefits.[23] The Board decided that the property owner rather than the general contractor

---

[18]   53 P.3d 1126 (Alaska 2002).

[19]   29 P.3d 242 (Alaska 2001).

[20]   655 P.2d 753 (Alaska 1982).

[21]   *Id.* at 754.

[22]   *Id.* at 754-55.

[23]   *Id.* at 755.

was the employer.[24] We reversed the Board, concluding that it had relied too heavily on the contract between the owner and the general contractor, and we required that the Board consider "the totality of all the relevant circumstances" in determining which of the two possible employers should be considered the employer for purposes of the Act.[25]

But in *Kroll* we also required the Board on remand to consider a more basic question: whether the owner should be considered an employer at all in light of the argument that he was a consumer of services rather than a producer of goods.[26] We held that the Board had applied a definition of employer that was too broad because it "fail[ed] to give proper weight to the statutory limitation to employment relationships" in the Act.[27] We noted that the "policy question [was] whether [the owner's] construction activity, either by itself or as an element of his rental activities, was a profit-making enterprise which ought to bear the costs of injuries incurred in the business."[28]

The Board in this case began its analysis by considering whether there was a contract of hire between Mullins and Lee's Massage. Mullins had the burden of proving the existence of such a contract.[29] The Board determined that Kang d/b/a Lee's

---

[24]    *Id.*

[25]    *Id.* at 756. Here the Commission applied this rule to a different issue — whether the work was in connection with a business or industry.

[26]    *Id.* at 756-57.

[27]    *Id.* at 757.

[28]    *Id.* (footnote omitted) (first citing 1C LARSON, *supra* note 7, § 50.24; and then citing *id.* § 50.21, at 9-70 to 9-71 & nn.4-5).

[29]    *See City of Seward v. Wisdom*, 413 P.2d 931, 935-36 (Alaska 1966) (holding that claimant, decedent's wife, "failed to prove that a contract of
(continued...)

-11-                                                                              **7245**

Massage and Mullins entered into a contract of hire, but it did not consider the capacity in which Kang was acting at that time or later, following their dispute, when she paid him $500. The Commission suggested that she might have been acting as her son's agent,[30] but it considered the possible agency irrelevant to the question on appeal, which it identified as "whether [Mullins's] employment was in connection with *a* business or industry." (Emphasis added.) But the answer to the abstract question the Commission posed is not sufficient to determine that the particular business the Board ordered to pay workers' compensation benefits — Lee's Massage — was Mullins's employer.

        The evidence the Board accepted showed that Kang and Mullins reached an agreement about repairing the building, but it does not show the role Kang played in that process.[31] She had different roles that the Board and Commission did not distinguish. She was a businesswoman, operating Lee's Massage in a partnership, but she rented the building — which served as both her residence and her place of business — from her son. She was Mullins's neighbor and, at least when these events began, his

---

[29](...continued)
employment . . . existed" at the time of worker's death).

[30]      Like the employer-employee relationship, the determination of an agency relationship has both factual and legal elements. *See Foster v. Cross*, 650 P.2d 406, 408 (Alaska 1982) ("While the questions of what constitutes agency and whether evidence is competent to show it are questions of law, the evaluation of the evidence and the decision on whether an agency relationship exists is for the factfinder."). The Board did not consider or make findings about this theory.

[31]      The same person can have more than one role in workers' compensation cases. *See, e.g.*, *Sauve v. Winfree*, 907 P.2d 7, 13 (Alaska 1995) (holding that exclusive remedy provision did not bar negligence action against coworkers who were also landlords).

friend. She had owned the building in the past and had received help from Mullins on earlier repair projects, evidently while she was the owner.

But the unrebutted evidence also showed that Kang's son Benjamin owned the building as of September 2014, before Kang approached Mullins about the roof repair, and that she paid Benjamin rent. She was therefore a tenant, and, as the Commission observed, nothing in the record suggests that she or her business had any obligation to maintain the premises to the extent of making the major repairs that underlie this case. No evidence was elicited at the hearing about the nature of the tenancy between Kang and her business and Benjamin Kang. A tenant generally is a consumer of rental services, not a producer of those services.[32] In the absence of proof that Lee's Massage had a legal obligation to arrange and pay for major repairs on premises it rented from Benjamin Kang, Mullins did not meet his burden of proving that he entered into an employment contract with Lee's Massage — the entity he identified as his employer.[33] As a tenant, Kang, like the homeowners in *Gaede v. Saunders*,[34] had a consumptive role with respect to the building repairs. And unlike the putative employers in *Gaede,* she did not even own the home Mullins worked on.

---

[32] A residential landlord has a duty to "make all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." AS 34.03.100(a)(1). A landlord and the tenant of "a one- or two-family residence" can "agree in writing that the tenant perform specified repairs, maintenance tasks, alterations, and remodeling." AS 34.03.100(c). A commercial lease may assign to the tenant the duty to make repairs to the leased premises. *See Berrey v. Jeffcoat*, 785 P.2d 20, 22-23 (Alaska 1990) (discussing repair provisions of commercial lease). No written agreement or lease is in the record.

[33] In fact, Mullins described the repair job as "doing [Kang] a favor as a friend trying to help her out."

[34] 53 P.3d 1126, 1126 (Alaska 2002).

Here the Board and Commission essentially repeated the Board's mistake in *Kroll*: they in effect interpreted the phrase "in connection with a business or industry" in the definition of "employer"[35] to mean that "*all business or industry is to be considered as covered by the Act*."[36] The Board and Commission appear to have concluded that because Kang discussed the roof repair with Mullins and had a business that occupied part of the affected building, the labor associated with that contract was in connection with the service provided by her business, Lee's Massage, even though the benefit she received was in her role as a consumer of real estate rental services.

Setting aside Kang's status as a tenant, we conclude that the Commission also failed to properly consider whether the evidence showed that the repair work furthered the business of Lee's Massage. In *Nickels v. Napolilli* we reviewed a superior court's determination that a woman with an unconventional work arrangement on a small farm was an employee for purposes of the Act.[37] The woman was injured doing work related to the farm business.[38] The farm owners contended that the injury was not covered by the Act because the farm was not their principal source of income but rather "a lifestyle choice" that "ought not bear the costs of injuries in furtherance of" their farming activities.[39] But the farm did sell "animals, eggs, hay, farm equipment, and farm implements," and the owners "list[ed] the business in the phone book and a farm

---

[35] AS 23.30.395(20).

[36] *Kroll v. Reeser*, 655 P.2d 753, 757 (Alaska 1982) (emphasis in original).

[37] 29 P.3d 242, 245-46 (Alaska 2001).

[38] *Id.*

[39] *Id.* at 253.

products directory."[40] We upheld the superior court's determination that the worker was injured performing "a regular part of the regular work" of the farm business and held that the injury was covered by the Act because the work furthered that business.[41] Our analysis in *Nickels* was consistent with the way the American workers' compensation system is funded: according to Larson's treatise, "the consumer of a particular product ultimately pays the cost of compensation protection for the workers engaged in its manufacture."[42]

In *Kroll*, in our remand related to the basic question of the owner's status as an employer, we identified

> the policy question [as] whether [the owner's] construction activity, either by itself or as an element of his rental activities, was a profit-making enterprise which ought to bear the costs of injuries incurred in the business, or was the construction activity simply a cost-cutting shortcut in what was basically a *consumptive* and not a *productive* rol[e] played by [the owner].[43]

Nothing in the present case suggests that Mullins was injured performing work that was part of Kang's business. Mullins was not, as Kang points out, injured performing a massage. Nor was the injury related to the business's day-to-day maintenance activities,

---

[40]     *Id.* at 245.

[41]     *Id.* at 253.

[42]     1 ARTHUR LARSON ET AL., LARSON'S WORKERS' COMPENSATION LAW, § 1.04[2] (Matthew Bender rev. ed. 2015).

[43]     *Kroll v. Reeser*, 655 P.2d 753, 757 (Alaska 1982) (emphasis in original) (footnote omitted).

like sweeping or cleaning.[44]   The Commission correctly observed that "this type of project might be characterized as a real estate improvement project rather than as maintenance or repair ancillary to [the] massage parlor business."   But there is no evidence that Lee's Massage was engaged in the construction or real estate business or that Kang was engaged in any other "profit-making enterprise which ought to bear the costs of injuries" related to the major building repairs to her son's building.[45]

## V.   CONCLUSION

We REVERSE the Commission's decision.[46]

---

[44]   Whether the services are part of the potential employer's usual business is one of the factors in applying the regulatory relative-nature-of-the-work test. 8 AAC 45.890(2).  The Board resolved this issue in favor of Lee's Massage.

[45]   The Commission speculated that Kang may have acted as an agent for Benjamin in contracting with Mullins.  But Mullins provided no evidence to support that theory, and in any event Benjamin was not a party to the proceedings and would have to receive notice and opportunity to be heard before a factual determination could be made about whether his construction activity was sufficient to establish his status as an employer for purposes of the Act.  Our remand in *Kroll* suggests that construction or ownership of a building for purposes of renting out some units is not alone sufficient to determine employer status as a matter of law.  655 P.3d at 757; *see also* 6 LARSON ET AL., *supra* note 42, § 72.02[4] (setting out cases related to rental businesses and status as employer).

[46]   Kang also contends that the Commission erred in affirming the Board's default order.  We agree with her that the issue "is controlled by the first issue in the case."  Because we hold that Yong Kang d/b/a Lee's Massage was not Mullins's employer under the Act, the default order must also be reversed.